### STATE OF CONNECTICUT *v.* CASSIUS HOLLOWAY (5144)

DUPONT, C. J., HULL and DALY, Js.

Argued May 12—decision released July 28, 1987

*Stephen V. Moran,* deputy assistant public defender, for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, was *David Gold,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The two issues of this case are whether the trial court should have dismissed a charge of carrying a dangerous weapon as prohibited by General Statutes § 53-206,[1] and whether the court erred in its instructions on self-defense.[2]

The defendant and the victim began a fight, during the course of which the defendant stabbed the victim with a knife which had a blade of three and one-half inches in length. The defendant's testimony portrayed the victim as the aggressor of the fight, and the defendant claimed that he was forced, through fear for his own safety, to defend himself with his knife.

The defendant moved to dismiss the count of carrying a dangerous weapon on the ground that the knife did not fall within the proscribed weapons specifically

---

[1] General Statutes § 53-206 provides in pertinent part: "(a) Any person who carries upon his person any slung shot, air rifle, BB. gun, blackjack, sand bag, metal or brass knuckles, or any dirk knife, or a switch knife, or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, or any martial arts weapon and electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument, unless such person has been granted a written permit issued and signed by the first selectman of a town, the mayor or chief of police of a city or the warden of a borough, authorizing such person to carry such weapon or instrument within such town, city or borough, shall be fined not more than five hundred dollars or imprisoned not more than three years or both."

[2] The defendant was charged in a two count information with the crimes of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and of carrying a dangerous weapon in violation of General Statutes § 53-206. The jury found him guilty on both counts.

enumerated in General Statutes § 53-206. The defendant was charged with a violation of that portion of the statute which prohibits the carrying of a "dangerous . . . instrument." The defendant's claim of error requires a resolution of whether the carrying of a knife with a blade of less than four inches in length is included within the phrase "any other dangerous . . . instrument" as provided in General Statutes § 53-206. The state argues that the definition provided in General Statutes § 53a-3 (7)[3] applies to § 53-206, and that, therefore, the carrying of a knife with a blade of less than four inches in length may be a dangerous instrument when it is used under circumstances in which it is capable of causing death or serious physical injury.

The defendant argues that to construe the language of § 53-206 to include knives with a cutting edge of less than four inches would render superfluous the enumeration in the statute of various knives which are specifically prohibited from being carried by persons in this state, and in particular the words "or any knife the edged portion of the blade of which is four inches or over in length."

The penal code's definitions, as provided in General Statutes § 53a-2, apply to all offenses of the code and to offenses defined in the general statutes "unless otherwise expressly provided or unless the context otherwise requires . . . ." Section 53-206 is part of the general statutes and not the penal code. That statute does not expressly provide that the definitions of § 53a-3 shall not apply, nor does § 53a-3 (7) provide that its definition shall not apply to § 53-206. When the legislature has intended that a particular offense contained in the general statutes should be exempted from the

---

[3] General Statutes § 53a-3 (7) provides in pertinent part: " 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

definitions contained in General Statutes § 53a-3, it has said so. See General Statutes § 53a-3 (6); *State* v. *Scully*, 195 Conn. 668, 677–78 nn.13 and 14, 490 A.2d 984 (1985). We conclude, therefore, that the penal code definition of "dangerous instrument" applies to § 53-206 "unless the context [of General Statutes § 53-206] otherwise requires . . . ." General Statutes § 53a-2.

The context in which the words "or any other dangerous . . . . weapon or instrument" are used is in a statute entitled "Carrying and sale of dangerous weapons." General Statutes § 53-206. The purpose of the statute is to prevent the carrying of a dangerous weapon without a permit.

The statute does not specifically enumerate all of the dangerous weapons which a person may not carry without a permit, but rather should be read to include, within its purview, the carrying of any dangerous weapon whether or not specifically listed. Several cases decided prior to the adoption of General Statutes §§ 53a-2 and 53a-3 have done so. For example, the statute does not specifically prohibit the carrying of all types of rifles but does prohibit the carrying of an air rifle. It has been held, nevertheless, that a loaded .22 caliber rifle is a dangerous weapon within the terms of the statute. *State* v. *Mallette*, 153 Conn. 584, 586–87, 219 A.2d 447 (1966); see also *State* v. *Arpino*, 24 Conn. Sup. 85, 87–90, 186 A.2d 827 (1962); *State* v. *Ryan*, 23 Conn. Sup. 425, 428–29, 184 A.2d 183 (1962); but see *State* v. *Harris*, 5 Conn. Cir. Ct. 551, 553, 258 A.2d 319 (1968).

The articles specifically mentioned in § 53-206 are generally recognized as dangerous weapons per se. *State* v. *Ryan*, supra, 428. "It is obvious that there are many articles other than those specifically mentioned which might be included within the scope of 'danger-

ous or deadly weapon,' if they were used or carried with intention to use them as weapons. Articles which are manufactured and generally used for peaceful and proper uses . . . may become dangerous or deadly weapons when they are used or carried for the purpose of assault or defense. Ordinarily, where general words follow a particular enumeration, they are intended to apply only to matters of the same general character. . . . However, the evil which was under legislative consideration . . . in the original enactment of § 53-206 . . . was the danger of assaults with dangerous and deadly weapons, and therefore certain specified articles were mentioned, not to the exclusion of other potentially dangerous or deadly weapons, but to their inclusion by the use of the words 'or any other dangerous or deadly weapon.' . . . [T]he construction of this phrase cannot be limited to weapons of the same general character." (Citation omitted.) Id., 428–29.

We hold that the definition of § 53a-3 (7) applies to § 53-206, and the words "any other dangerous or deadly weapon or instrument" as used in the context of § 53-206 do not apply solely to weapons of the same precise kind enumerated in that statute. The trial court, therefore, did not err in denying the defendant's motion to dismiss the charge of carrying a dangerous weapon.

The defendant's second claim of error is that the trial court erred in failing to instruct the jury that the state had the burden of disproving his defense of self-defense beyond a reasonable doubt.[4] The evidence presented at trial supported the defendant's request for a self-defense charge. The defendant properly requested that the court charge the jury on self-defense, and excepted to the court's failure to charge the jury on the state's burden of disproving the defense. He was entitled to

---

[4] General Statutes § 53a-12 provides in pertinent part: "(a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt."

have the jury properly and adequately instructed on that theory of defense. *State* v. *Folson,* 10 Conn. App. 643, 646, 525 A.2d 126 (1987). The defense of self-defense is raised by way of justification, and when such defense is asserted "the state shall have the burden of disproving such defense beyond a reasonable doubt." General Statutes § 53a-12; *State* v. *Miller,* 186 Conn. 654, 663, 443 A.2d 906 (1982); *State* v. *Fletcher,* 10 Conn. App. 697, 707–708, 525 A.2d 535 (1987); *State* v. *Folson,* supra, 647; *State* v. *Fullard,* 5 Conn. App. 338, 340, 497 A.2d 1041 (1985). On review, we must examine the court's charge to determine whether the instructions were proper, adequate, clear and comprehensible, and served to provide guidance to the jury in applying the law to the facts of the case. *State* v. *Fletcher,* supra, 704.

As the state has conceded and our review of the transcript has revealed, the trial court's instructions did not specifically charge the jury that the state bore the burden of disproving the defense to the crime of assault in the second degree beyond a reasonable doubt. The state argues, however, that the charge read as a whole was adequate to instruct the jury on that burden of proof because the court charged the jury on the state's burden in connection with the crime of carrying a dangerous weapon.[5]

---

[5] The portion of the instructions to the jury which the state claims was adequate to inform the jury of the state's burden of disproving self-defense beyond a reasonable doubt states as follows:

"You have to decide, ladies and gentlemen, based upon the evidence, upon the testimony, whether or not these exceptions apply, whether or not there is, as I defined the law of justification or so-called self-defense, whether or not that even applies in this case as has been testified, and within the definitions of the applicable law as I have given it to you.

"I want to go back to the second count for a moment which, as you know, charges Cassius Holloway with carrying a dangerous instrument. I want to make one thing clear.

"The evidence has been that the blade in question was, I don't recall the exact measurement, I am sure you will and you will consider that, but that

"A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." *State* v. *Miller,* supra, 660–61; see also *State* v. *Rouleau,* 204 Conn. 240, 528 A.2d 343 (1987).

As the state concedes, self-defense is not a defense to the charge of carrying a dangerous weapon.[6] It is a defense to the charge of assault in the second degree. The failure of the court to instruct the jury on the state's burden of disproving the defense of self-defense on the charge of assault in the second degree left the jury without a knowledge of the law which it could apply to the facts relevant to that charge. That lack precluded the jury from considering whether the state had proved

---

the state is not claiming, as I understand it, that the knife is, per se, in and of itself a dangerous instrument or deadly weapon.

"So if the state does not prove beyond a reasonable doubt that Cassius Holloway's actions were not justifiable self-defense, then any use of a knife, and I believe that the testimony was the blade was 3 inches or so, any use of the knife in question, state's Exhibit C, with this blade of approximately 3 inches, would not be a violation of Section 53-206 (a) which is the statutory number of carrying a dangerous weapon; again, for the reason that there is nothing per se illegal about a pocketknife with a 3 inch blade.

"The blade of the knife in question does not make it per se a dangerous instrument; it all depends on the use or attempted use of the knife in question. If the state does not prove [disprove] beyond a reasonable doubt that it was used for justifiable self-defense, then Cassius Holloway has not committed the crime as listed and set forth in the second count of the Information of carrying a dangerous instrument, in violation of Section 53-206 (a)."

[6] It was error for the court to charge on the defense of self-defense as to the charge of carrying a dangerous weapon. See General Statutes § 53a-16. The error, however, benefited the defendant and did not deprive him of a fair trial as to that charge. *State* v. *Cochran,* 191 Conn. 180, 187–88, 463 A.2d 618 (1983). A charge given on a superfluous defense of self-defense which does not prejudice a defendant does not lead to the conclusion that it was reasonably possible for a jury to be misled. *State* v. *Silveira,* 198 Conn. 454, 468, 503 A.2d 599 (1986).

beyond a reasonable doubt that the defense had been disproved. Without such knowledge, the jury was left to determine for itself whether the instruction given by the court as to the state's burden of disproving self-defense in connection with the crime of carrying a dangerous weapon also applied to the crime of assault in the second degree. A particular offense and its justification, if any, must be considered together. *State* v. *Cavros,* 196 Conn. 519, 528, 494 A.2d 550, cert. denied, 474 U.S. 904, 106 S. Ct. 233, 88 L. Ed. 2d 232 (1985). A jury must receive a proper instruction on justification in order for it to determine whether the state has met its burden of disproof. *State* v. *Fletcher,* supra, 708. It cannot make such a determination without the knowledge that the state has that burden.

The defendant here was charged with two separate and distinct crimes. The jury should not have had to imply that the charge on self-defense as to one crime was applicable to the other crime. The jury was left without a knowledge of the law applicable to the defendant's claim of self-defense as to the charge of assault in the second degree. We conclude that it was reasonably possible that the jury was misled. See *State* v. *Rouleau,* supra; *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984).

There is error as to the count of assault in the second degree, the judgment is set aside as to that count and the case is remanded for a new trial.

In this opinion, HULL, J., concurred.

DALY, J., dissenting. I disagree with the majority to the extent that I feel that *State* v. *Harris,* 5 Conn. Cir. Ct. 551, 258 A.2d 319 (1969), is still good law and was not changed by the advent of the state penal code. The trial court should have dismissed the charge of carrying a dangerous weapon. I concur with the remainder of the majority opinion.