STATE OF CONNECTICUT *v.* THOMAS HALL
(5398)

BORDEN, STOUGHTON and NORCOTT, Js.

Argued October 19, 1988—decision released February 21, 1989

*Sydney T. Schulman,* with whom, on the brief, was *Otto Witt,* for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, was *Dennis O'Connor,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant, Thomas Hall, was charged with murder in violation of General Statutes § 53a-54a and, after a trial to a jury, was convicted of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). On March 11, 1985, the defendant was sentenced to a prison term of not less than ten nor more than twenty years. On this appeal, he claims that the trial court erred (1) in denying his motion to dismiss which he based on the state's failure to effect a timely arrest, (2) in not instructing the jury on the defense of self-defense with respect to the lesser included offense of manslaughter in the second degree, (3) in refusing to admit certain prior convictions of the victim, (4) in refusing to admit descriptions of the victim's violent habits, specific acts and reputation for carrying a gun, and (5) in refusing to instruct the jury on criminally negligent homicide. We find error.

The jury reasonably could have found the following: On January 27, 1981, the defendant was involved in an altercation with James "Bro" Robinson at the VIP Lounge in Hartford. The fight inside the bar moved outside where the defendant fired six gunshots into Robinson in rapid succession. The entire incident occurred within a few moments, the shots were fired almost at the instant Hall and Robinson exited the VIP Lounge, and there was no evidence presented as to which of the shots were the fatal ones. The defendant left the scene immediately after the shooting. Other facts relevant to the issues in this appeal will be discussed, infra.

I

Before reaching the principal claim of error relating to the defendant's trial, we address his contention that the trial court erred in denying his pretrial motion to dismiss the murder charge because of prearrest delay.

The defendant argues that the three and one-half year period required to locate him violated both his due process rights and his sixth amendment right to a speedy trial.[1] He claims that his sixth amendment right arose as of the date the arrest warrant issued, and that his fourteenth amendment due process rights were violated by the unavailability of witnesses due to the delay.

The undisputed facts relevant to this claim are as follows. Shortly after the shooting on January 27, 1981, the defendant drove to Hartford Hospital to obtain emergency medical care for lacerations. He immediately left the hospital without giving any substantive information about his wounds and without paying. He and his girlfriend then drove to her home in New Britain where the defendant had been living. The defendant packed and left for another friend's house in New Britain. Several weeks later, he moved to Oregon where he resided until his arrest.[2] It is clear that although the police asked the defendant's mother to have him contact them, the defendant never did so; nor did he ever inquire about the extent of Robinson's injuries.

---

[1] Although the defendant's statement of the issue alleges violations of both the state and federal constitution, he does not advance any argument for the treatment of the issue under the state constitution. We therefore consider only the federal claim. See State v. Mercer, 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988).

[2] In August, 1981, the defendant was issued a valid Oregon driver's license. In addition, he was employed under his own name and social security number.

At trial, several Hartford police officers testified as to the efforts made to locate the defendant after the shooting. The immediate efforts of the police included the following: (1) interviews with the victim's girlfriend and the defendant's mother; (2) a surveillance of the defendant's mother's residence and the housing project where the defendant was reported to have been living with his girlfriend; (3) a records check on the defendant's mother's surname, Vandeberg, that revealed the alias "Hall"; (4) the distribution of the defendant's mug shots to Hartford police officers; (5) the entry of all vital information on the defendant and his vehicle into the National Crime Information computer; and (6) the acquisition of an arrest warrant for the defendant on January 28, 1981.

Additionally, the principal investigating officer, Peter Darby, checked with the state police of each of the New England states and requested that they run checks on any of the defendant's relatives living there. The police also conducted periodic surveillances of a Bloomfield residence where it was believed the defendant's father lived. In April, 1981, the police discovered the defendant's car being driven in New Britain by a man who had purchased the vehicle from the defendant's girlfriend. Thereafter, Darby followed many leads in the New Britain area in an attempt to locate the defendant. All efforts were unsuccessful, and the police then considered the case "inactive."

In the summer of 1984, the defendant's employer, a bus company in Oregon, conducted a background check on him through the National Crime Information computer. The Hartford police were alerted, and the defendant was arrested on June 15, 1984. Waiving extradition, he was returned to Connecticut.

We turn first to the defendant's claim that his sixth amendment right to a speedy trial was violated by the

delay in arresting him. The issuance of an arrest warrant in and of itself does not trigger the sixth amendment right to a speedy trial of a person not yet arrested. *State* v. *Crawford,* 202 Conn. 443, 452 n.13, 521 A.2d 1034 (1987). "Absent a formal charge, the sixth amendment right to a speedy trial does not extend to the period prior to the arrest. *United States* v. *Marion,* 404 U.S. 307, 321, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)." *State* v. *Crawford,* supra, 453 n.13. The delay in this case relates to the period of time before the defendant was arrested or formally charged by information or indictment. Accordingly, the sixth amendment provides no basis for his claim.

With respect to the defendant's alternative claim that the prearrest delay violated his fourteenth amendment due process rights, we again disagree. "In order to establish a due process violation because of pre-accusation delay, the defendant must show both that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant." *State* v. *Morrill,* 197 Conn. 507, 522, 498 A.2d 76 (1985). "[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States* v. *Lovasco,* 431 U.S. 783, 790, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977); see also *United States* v. *Marion,* supra. "In considering whether an excessive delay requires the dismissal of an indictment, a court must first determine whether the defendant suffered *actual* prejudice because of the delay. *United States* v. *Carrath,* 699 F.2d 1017, 1019 (9th Cir. 1983), cert. denied, 464 U.S. 1038, 104 S. Ct. 698, 79 L. Ed. 2d 164 (1984)." (Emphasis added.) *United States* v. *Horowitz,* 756 F.2d 1400, 1405, (9th Cir. 1985), cert. denied, 474 U.S. 822, 106 S. Ct. 74, 88 L. Ed. 2d 106 (1985).

From our careful review of the record before us, we find nothing from which we can conclude (1) that the reasons for the delay were unjustifiable or occasioned by the police so as to give them a tactical advantage over the defendant, or (2) that the delay resulted in prejudice to the defendant.[3] The defendant's arguments relating to this claim ignore the obvious role the defendant himself played in the delay about which he so vigorously protests. Under the circumstances of this case, we conclude that the three and one-half year delay between the incident and the defendant's arrest did not violate his right to due process of law.

## II

We now turn to the dispositive issue in this case. The defendant argues that he was entitled to a jury instruction on the defense of self-defense with respect to the lesser included offense of manslaughter in the second degree, and that the trial court erred in refusing to give his requested instruction. The court did submit manslaughter in the second degree to the jury as a lesser included offense, but specifically instructed the jury that the defense of self-defense did not apply to that offense. The state contends that the trial court did not err and bases its claim on the following grounds: (1) there was insufficient evidence at trial to warrant a self-defense instruction; (2) the self-defense instruction is inconsistent with the elements of manslaughter in the second degree; (3) the court's instruction on self-defense for murder and manslaughter in the first

---

[3] The defendant's arguments that the delay prohibited him from locating possible eyewitnesses, and caused a certain defense eyewitness's failure to recall the identity of the aggressor in the altercation, are without merit. "Mere assertions that the testimony of a missing witness might have been useful, or that witnesses' memories may have faded with the passage of time is [sic] not 'proof of actual prejudice' required by *United States* v. *Marion.*" *United States* v. *Horowitz,* 756 F.2d 1400, 1405 (9th Cir.), cert. denied, 474 U.S. 822, 106 S. Ct. 74, 88 L. Ed. 2d 106 (1985).

degree was sufficient in that the jury's rejection of self-defense, as evidenced by the defendant's conviction of manslaughter in the first degree, renders the failure to instruct on manslaughter in the second degree academic; and (4) the defendant's requested instruction was an erroneous statement of Connecticut law. We will address these issues in the order in which the state has presented them.

## A

### SUFFICIENCY OF THE EVIDENCE

A defendant is entitled to the requested instruction of self-defense under General Statutes § 53a-19[4] whenever there is sufficient evidence at trial to raise a reasonable doubt concerning justification. *State* v. *Cassino,*

[4] General Statutes § 53a-19 provides: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

188 Conn. 237, 243, 449 A.2d 154 (1982); see also *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986); *State* v. *Folson,* 10 Conn. App. 643, 646–47, 525 A.2d 126 (1987). The state has the burden of disproving the defense beyond a reasonable doubt. General Statutes § 53a-12 (a); *State* v. *Miller,* 186 Conn. 654, 660–61, 443 A.2d 906 (1982).

We first review the evidence presented at trial in the light most favorable to the defendant's claim that he was entitled to the instruction. *State* v. *Fuller,* supra, 275; *State* v. *Folson,* supra, 647. We find that the evidence provided a sufficient basis for the self-defense instruction. At trial, there was evidence presented to the jury that the defendant, confronted with an acknowledged violent person during a rapidly escalating verbal and physical altercation, fired six gunshots into the victim as that altercation spilled into the street. The defendant testified that the victim was armed with a gun, that he was fearful for his life, that he was trying to protect himself and that he did not intend to kill the victim. " '[A] defendant is "entitled to have instructions presented related to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." *United States* v. *Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).' *United States* v. *Alfonso-Perez,* 535 F.2d 1362, 1365 (2d Cir. 1976)." *State* v. *Fuller,* supra, 278; see also *State* v. *Folson,* supra, 646. Against this standard, the evidence of justification was sufficient for the trial court to have presented the theory of self-defense for consideration by the jury.

## B

### INCOMPATIBILITY OF MANSLAUGHTER IN THE SECOND DEGREE AND SELF-DEFENSE

Our next inquiry focuses on the state's claim that the defense of justification is inconsistent with the elements

of manslaughter in the second degree. The state's argument evinces the difficulty involved in determining the defendant's state of mind regarding two interrelated concepts, the justifiability of action required for the defense and the unjustifiability of risk required for commission of the crime.[5] Our Supreme Court has dealt with a similar problem regarding a jury's determination of a defendant's state of mind for the purpose of establishing lesser included offenses in homicide cases. In *State* v. *Rodriguez,* 180 Conn. 382, 399–407, 429 A.2d 919 (1980), the court recognized the extremely difficult task a jury has in distinguishing among the elusive concepts of the culpable states of mind required for the various levels of homicide. To address this situation, the court dispensed with the requirement of *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), that an instruction on a lesser included offense need be given only when "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser." The court in *Rodriguez* concluded that, in a homicide prosecution, an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense. *State* v. *Rodriguez,* supra.

In *State* v. *Fuller,* supra, 280, our Supreme Court considered the issue of whether the defense of duress

---

[5] General Statutes § 53a-56 (a) provides in pertinent part: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

General Statutes § 53a-3 (13) provides that "[a] person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

was inconsistent with the element of intent required for robbery in the first degree. The court stated that the inconsistency argument "raises broad philosophical issues concerning the nature of voluntary action for purposes of criminal responsibility and the appropriate conditions for holding a person morally blameworthy." Id. Focusing again on the elusive concept of the accused's state of mind, the court held that "[a] jury should not be called upon to resolve such an esoteric philosophical question at the expense of the defendant" without an appropriate instruction on duress. Id.

In *Rodriguez,* the court recognized a jury's difficulty in determining the culpable state of mind of the defendant from among those required for the various levels of homicide, and in *Fuller* the court recognized the jury's difficulty in determining the voluntariness of action required for criminal responsibility for purposes of determining the defense of duress. In this case, we similarly recognize the difficulty a jury has in weighing the justifiability of risk and action inherent in the crime of manslaughter in the second degree and the concept of self-defense. Our Supreme Court resolved the difficulty in *Rodriguez* by eliminating the second prong of *Whistnant* in homicide prosecutions, and in *Fuller* by requiring that the court instruct the jury on the defense of duress. The gravamen of the reasoning in these cases is that, in matters involving such esoteric concepts, the jury should have the benefit of as much information and instruction as will aid them in arriving at a just verdict. We find that the nature of the evidence in this case that entitled the defendant to an instruction on self-defense; part A, supra; involves the same difficulties addressed in *Fuller* and *Rodriguez.* We conclude, therefore, that the trial court should have instructed the jury on self-defense with respect to the lesser included offense of manslaughter in the second degree.

## C

### SUFFICIENCY OF THE TRIAL COURT'S INSTRUCTION ON SELF-DEFENSE TO MURDER AND MANSLAUGHTER IN THE FIRST DEGREE

We next address the question of whether the trial court's failure to instruct the jury on self-defense to manslaughter in the second degree is academic because the instruction on self-defense for murder and manslaughter in the first degree was sufficient. We begin our analysis of this argument by noting that the trial court specifically instructed the jurors that they were not to consider self-defense for manslaughter in the second degree.

The state contends, however, that the question of whether the court should have instructed the jury on self-defense for manslaughter in the second degree is academic because the jury presumably followed the court's instructions to consider the lesser offenses only if it found the defendant not guilty of each of the greater offenses. Thus, it argues, in finding the defendant guilty of manslaughter in the first degree, the jury rejected self-defense without even considering the lesser offense. We disagree.

In *State* v. *Monte*, 131 Conn. 134, 136–37, 38 A.2d 434 (1944), our Supreme Court rejected the principle that, in a case in which the evidence warrants an instruction on a lesser included offense, the failure to give such an instruction is harmless error when the jury found the defendant guilty of the greater offense. The court recognized that jury verdicts are often the product of "open-minded discussions and an honest weighing of the opinion of others"; id., 136; which necessitates the giving of the whole panoply of possible verdicts. The crux of the court's reasoning in *Monte* was that "[i]n the effort of a jury to reach a verdict

with which each member can conscientiously agree, the situation presented where the alternative is between finding a defendant guilty as charged or not guilty may be quite different from one where, under the charge of the court, they have the further choice of finding him guilty of some lesser offense embraced within the information. From the standpoint of the actual process by which juries arrive at verdicts, a failure to submit to them the lesser offense as a permissible basis for their verdict may work a very serious harm to the defendant." Id., 136–37. Therefore, when the jury has been denied the opportunity to consider all the possibilities of lesser included crimes, conviction of the greater offense does not render the failure to give the lesser included offense academic or harmless. Id. See also *State* v. *Whistnant,* supra.

Given this precedent, we must determine whether the failure to instruct the jury on self-defense for a lesser included offense is academic or harmless when the jury has convicted the defendant of the greater offense and has thereby rejected the defense that was raised as a justification for the defendant's actions. Analyzing this question pursuant to the *Monte* and *Whistnant* reasoning, we conclude that the jury should have been given the opportunity to consider self-defense with regard to the lesser included offense of manslaughter in the second degree. Because it is settled that a jury should be given the entire range of possible verdicts in a case in which the evidence warrants the giving of the lesser included offenses, it follows that defenses that are supported by a reasonable construction of the evidence should be given along with those same lesser charges. We are not persuaded by the argument that, in cases in which the defendant is convicted of the greater offense, the failure to give warranted instructions on the lesser included offenses is not harm-

less, while the failure to give similarly warranted instructions on corresponding defenses is harmless.

Additionally, "[t]he defense of self-defense is raised by way of justification, and when such defense is asserted 'the state shall have the burden of disproving such defense beyond a reasonable doubt.' General Statutes § 53a-12." *State* v. *Holloway,* 11 Conn. App. 665, 670, 528 A.2d 1176 (1987). By refusing to instruct the jury on self-defense, the trial court failed to instruct the jury on the state's burden of disproving the defense on the charge of manslaughter in the second degree, and, accordingly "left the jury without a knowledge of the law which it could apply to the facts relevant to that charge." Id., 671. A specific offense and its justification, if any, must be considered together. *State* v. *Cavros,* 196 Conn. 519, 528–29, 494 A.2d 550, cert. denied, 474 U.S. 904, 106 S. Ct. 233, 88 L. Ed. 2d 232 (1985). In this case, the state bore the burden of proof on the charge of manslaughter in the second degree and the burden to disprove the defense of self-defense. See *State* v. *Miller,* supra, 663; *State* v. *Fletcher,* 10 Conn. App. 697, 707–708, 525 A.2d 535 (1987). We conclude that, under the facts of this case, the trial court erred in failing to provide the jury with the proper instructions, thus precluding it from determining whether the state met these burdens.

## D

### DEFENDANT'S ERRONEOUS INSTRUCTION REGARDING SELF-DEFENSE

Because we have found error that requires a new trial, we limit our examination of the next claim of error to whether the trial court erred in rejecting the defendant's requested instruction on self-defense that was based on *Brown* v. *United States,* 256 U.S. 335, 41 S.

Ct. 501, 65 L. Ed. 961 (1921).[6] In this regard, we conclude, for the purposes of the new trial, that the trial court did not err. In *State* v. *DeJesus,* 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984), our Supreme Court rejected the "heat of passion" or "excessive force" type of charge that was at issue in the *Brown* decision, in favor of a subjective-objective test. The trial court was correct in refusing to give the defendant's requested instruction.

We discuss the remaining issues raised by the defendant as they also are likely to arise in the new trial.

### III

The defendant claims that the trial court erred in excluding evidence of prior convictions of the victim. At trial, in order to support his self-defense claim, the defendant offered a list of the victim's convictions, dating from 1957 through 1980, and ranging in severity from breach of peace to manslaughter. After examining the record of convictions, the trial court ruled that only a few could be described as crimes of violence. The court further ruled that the convictions were lacking in probative value and were too remote in time and too dissimilar in nature to the events at issue to be admissi-

---

[6] The defendant's requested instruction on self-defense reads as follows: "If a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant, he may stand his ground. Detached reflection cannot be demanded in the presence of a pointed gun. Therefore, it is not a condition of self-defense that one in that situation should pause to consider whether a reasonable man might think it isn't possible to retreat or disable his assailant rather than to kill him. Neither is it necessarily a condition of asserting self-defense that a person in such position must stop after each shot to survey the situation to determine if another shot is necessary. Self-defense may be found in this case, even when six shots were fired by Mr. Hall at Mr. Robinson, if you find that the six shots followed close upon each other while the heat of conflict was on, and if Mr. Hall believed that he was fighting for his life. Authority: *Brown* v. *United States,* 256 U.S. 335, 343, 344 (1921); *Rowe* v. *United States,* 164 U.S. 546, 558."

ble. In deciding to exclude this evidence, the court paid particular attention to the victim's 1967 conviction for manslaughter, and concluded that even this conviction was too remote and cumulative.[7]

In Connecticut, when an accused has claimed self-defense, he "may show that the deceased was the aggressor by proving the deceased's alleged character for violence." *State* v. *Miranda,* 176 Conn. 107, 114, 405 A.2d 622 (1978); see also *State* v. *Gooch,* 186 Conn. 17, 21, 438 A.2d 867 (1982); *State* v. *Delgado,* 13 Conn. App. 139, 149, 535 A.2d 371 (1987). The defendant may prove the victim's character by evidence of the deceased's crimes of violence, but "the accused is not permitted to introduce the deceased's entire criminal record into evidence in an effort to disparage his general character . . . . " *State* v. *Miranda,* supra. "The trial court has very broad discretion in ruling on the admissibility of evidence"; *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987); and " '[t]he determination of the relevancy and remoteness of evidence is within the sound discretion of the trial court.' *State* v. *Maldonado,* 193 Conn. 350, 365, 478 A.2d 581 (1984)." *State* v. *Miller,* supra. We will not disturb the trial court's ruling on an evidentiary matter unless the court has clearly abused its discretion. *State* v. *Parker,* 197 Conn. 595, 601, 500 A.2d 551 (1985).

Our review of the record reveals that during the course of the trial, the jury heard extensive testimony regarding Robinson's violent, aggressive nature, independent of his criminal record. A great part of that testimony came from police officers as well as from the defendant. The trial court was correct in finding that

---

[7] Our review of the list of Robinson's many convictions leads us to conclude that the only conviction deserving of the trial court's close scrutiny was Robinson's manslaughter conviction in 1967. Accordingly, we will limit our review of this claim of error to that conviction.

Robinson's violent nature was undisputed, and that evidence of his manslaughter conviction was cumulative. There was ample other evidence from which the jury could have inferred that Robinson was the aggressor and that the defendant's fear of him was reasonable. Because we have determined that the evidence was cumulative, we need not reach the issue of whether the trial court was correct in finding that the conviction was too remote to be probative. We conclude that the trial court's refusal to admit evidence of Robinson's manslaughter conviction was not error.

## IV

The defendant's next claim of error is somewhat related to the prior convictions claim. He contends that the trial court erred in excluding evidence of the victim's violent habits,[8] reputation for carrying a gun, and specific violent acts. We disagree.

It is axiomatic that in a homicide prosecution in which the accused has claimed self-defense, "[e]xcept where character is directly in issue, a person's violent character may not be established by evidence of specific acts." *State* v. *Gooch,* supra; *State* v. *Miranda,* supra, 112. In the present case, the undisputed violent character of Robinson was not in issue. We find from our review no basis upon which we should recognize an exception to the rule precluding admission of evidence of the victim's specific acts of violence.

The defendant also contends that the trial court erred in prohibiting him from questioning police officers and

---

[8] The defendant has not briefed his argument relating to the victim's violent habits beyond a mere assertion of the claim. " ' "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." ' *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 250 n.3, 524 A.2d 610 (1987), quoting *Hayes* v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984)." *Morning Star Holding Co.* v. *Kostopoulos,* 12 Conn. App. 593, 595, 533 A.2d 569 (1987).

other witnesses as to whether the defendant had a reputation for carrying a gun. The defendant claims that the victim's reputation for carrying a firearm was clearly relevant to his self-defense claim. The trial court ruled that the proffered testimony would be cumulative to the already abundant evidence before the jury demonstrating that Robinson was a violent man. We agree.

At the trial, the defendant testified that Robinson owned a gun, had fired it at a gambling game on another occasion, and had a gun on the night of the incident in question. The defendant's girlfriend also testified that Robinson had a gun on the night he was shot. If a claimed error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling that was probably harmful to him. *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). We conclude that the defendant has not carried this burden and, therefore, it was not error for the court to exclude testimony relative to Robinson's general reputation for carrying a gun.

V

The defendant's final claim is that the trial court erred in denying his request to instruct the jury on the lesser included offense of criminally negligent homicide in violation of General Statutes § 53a-58.[9] The

---

[9] General Statutes § 53a-58 provides in pertinent part: "(a) A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person, except where the defendant caused such death by a motor vehicle."

General Statutes § 53a-3 (14) provides in pertinent part that "[a] person acts with 'criminal negligence' with respect to a result or circumstance . . . when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

defendant filed a timely request to charge prior to closing arguments, and he duly took exception to the court's refusal to give his requested instruction.

A lesser included offense instruction must be given when: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without first having committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* supra. The trial court rejected the defendant's requested instruction because it found that the *Whistnant* requirements were not met. On appeal, the defendant contends that he established all four prongs of *Whistnant,* while the state argues that the requested instruction failed to satisfy the first and third prongs.

The state first argues that our review of this claim should go no further than an examination of the first prong of *Whistnant* because the defendant's requested instruction failed to comply with Practice Book § 852 (now § 854). This section requires that a request to charge set forth "the facts supported by the evidence to which the proposition would apply." The state contends that the defendant's request failed to refer to any facts whatsoever. The first prong of *Whistnant* requires that the defendant request "an appropriate instruction" in compliance with the rules of practice. *State* v. *Ostroski,* 201 Conn. 534, 558, 518 A.2d 915 (1986); *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986). Our Supreme Court has defined an appropriate instruc-

tion under *Whistnant* as one containing " ' "a complete statement of the essential facts as would have justified the court in charging in the form requested." *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326 (1967), quoting *Dwyer* v. *Connecticut Co.,* 103 Conn. 678, 680, 131 A. 838 (1925).' *State* v. *Killenger,* 193 Conn. 48, 57, 475 A.2d 276 (1984)." *State* v. *McIntosh,* supra, 160.

The defendant's requested instruction made only one reference to the facts in the following language: "The situation referred to in this case is only the situation commencing with the fight inside the VIP Lounge between Mr. Hall and Mr. Robinson and ending with the shots outside the VIP Lounge. Of course, again, if you find that the risk that Mr. Hall took in firing the shots at that time was justifiable as self-defense or was not a gross deviation from the standard of care that a reasonable person would use, then you must find Mr. Hall not guilty of criminally negligent homicide."

The defendant's request drew the trial court's attention to the crucial, relevant factual scenario so that the court could justifiably have given the requested instruction. The request is not the type of "omnibus request," absent any factual basis, that our Supreme Court has recently condemned. *State* v. *Ostroski,* supra, 558–59; *State* v. *McIntosh,* supra, 159; see also *State* v. *Martin,* 15 Conn. App. 58, 65, 544 A.2d 231, cert. denied, 209 Conn. 806, 548 A.2d 440 (1988). From our review of the record, we conclude that the defendant's instruction satisfied the first prong of *Whistnant.*

Our next inquiry is whether the trial court erred in finding that the defendant did not meet the remaining *Whistnant* requirements. General Statutes § 53a-45 (c) provides in pertinent part that the "jury before which any person indicted for murder . . . is tried may find him guilty of homicide in a lesser degree than that charged." " 'Whether an accused may avail himself of

this statutory privilege by means of a jury instruction is governed by the principles set forth in *State* v. *Rodriguez,* [supra], 399–400, and *State* v. *Whistnant,* [supra].' *State* v. *Falby,* 187 Conn. 6, 28, 444 A.2d 213 (1982)." *State* v. *Casey,* 201 Conn. 174, 188, 513 A.2d 1183 (1986). Under *Rodriguez,* for the purposes of satisfying the second prong of *Whistnant* in a homicide case, "an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." *State* v. *Rodriguez,* supra, 407. Our Supreme Court adopted this reasoning in *Rodriguez* because, in a homicide prosecution, the state of mind of the accused is often "the most significant and, at the same time, the most elusive element of the crime charged." Id., 404. The trial court's conclusion that it need not give an instruction on criminally negligent homicide because the defendant's testimony excluded the state of mind required for the commission of the crime constituted a determination that the defendant had not met the second prong of *Whistnant.* This conclusion was erroneous because it is just such a situation that is covered by the *Rodriguez* exception.

The *Rodriguez* court did not hold, however, that a lesser degree of homicide than that charged will always be the subject of a lesser included offense instruction because the third and fourth prongs of *Whistnant* must still be satisfied. *State* v. *Rodriguez,* supra, 407–408. Thus, unless there was no disputed evidence at trial reasonably susceptible to a conclusion that the defendant could have committed the lesser crime, the defendant was entitled to an instruction on criminally negligent homicide.

In resolving the matter of the defendant's requested instruction on the lesser included offense, the question before the trial court should have been limited to whether the evidence at trial was such that a jury rea-

sonably could have found that the defendant acted with criminal negligence in causing Robinson's death by failing to perceive a substantial and unjustifiable risk of the occurrence of that death from his actions. See *State* v. *Burge,* 195 Conn. 232, 244, 487 A.2d 532 (1985); see also *State* v. *Maselli,* 182 Conn. 66, 73, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981). Considering the evidence presented at trial in a light most favorable to the accused; *State* v. *Morin,* 180 Conn. 599, 609, 430 A.2d 1297 (1980); we conclude that the evidence could have permitted the jury to find that the defendant acted with criminal negligence, as opposed to recklessness or intent to kill, in causing Robinson's death. The defendant's testimony regarding his actions during the altercation with Robinson was but one piece of a puzzle from which the jury, after accepting or rejecting it, could have concluded that he was guilty of criminally negligent homicide. It was error for the trial court to take this consideration away from the jury by failing to give the requested instruction.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion BORDEN, J., concurred.

STOUGHTON, J., dissenting. I am unable to agree with part II of the majority opinion. I disagree with the conclusion of the majority that on the facts of this case the trial court committed harmful error in failing to instruct the jury that if they reached the lesser included offense of manslaughter in the second degree, they might consider that the actions of the defendant were justified by principles of self-defense.

The defendant was charged with murder in violation of § 53a-54a, and the court instructed the jury on the charge of murder, and also on first degree manslaugh-

ter and second degree manslaughter as lesser included offenses. The jury was not required to find the defendant either guilty as charged or not guilty, but was given the further choice of finding him guilty of some lesser offense embraced within the information. *State* v. *Monte*, 131 Conn. 134, 137, 38 A.2d 434 (1944). The jury was instructed on self-defense as applied to both murder and manslaughter in the first degree, but was instructed not to consider self-defense as to manslaughter in the second degree. Because the defendant was found guilty of manslaughter in the first degree, the jury necessarily rejected his claim of self-defense. When the jurors were instructed that they might consider manslaughter in the second degree, the defendant received the full benefit of the principle which permits the jury to consider lesser offenses in the open-minded discussion and honest weighing of opinion which lead to a verdict with which each member can conscientiously agree. *State* v. *Monte*, supra, 136.

It does not seem to me that the defendant would have benefited by an instruction that if they reached consideration of manslaughter in the second degree, which they did not do, the jurors might then find the defendant not guilty of that offense by reason of self-defense. They might well have been reluctant to find him not guilty if their only choices were between guilty as charged or not guilty. The benefit to the defendant is derived from the alternative given the jury to find him guilty of a lesser charge. Accordingly, I conclude that any error in failing to instruct the jurors that they might consider self-defense to the lesser included offense of manslaughter in the second degree was harmless beyond a reasonable doubt.