[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. FACTS:
On June 27, 1995, at about 7:50 A.M., Trooper Covey of the CT Page 13172 Connecticut State Police stopped the defendant, Robert Marion, on Route 12 in Thompson, Connecticut. The defendant was operating a 1976 Dodge pickup truck which did not have a Connecticut emissions sticker affixed to its windshield. The vehicle was also stopped because the defendant did not appear to be wearing a seat belt. As the trooper approached the vehicle, the defendant stated that he had a "permitted loaded handgun" in the vehicle, for which he meant that he had a valid permit to carry the weapon. Trooper Covey had the defendant step to the rear of the vehicle, looked into the passenger compartment and retrieved the handgun. The trooper testified that he retrieved the handgun for safekeeping as there was a ten year old boy in the passenger seat of the vehicle. In so doing, he observed in plain view, a "Marine Corps style K-bar type knife", the blade of which appeared to be over four inches in length. In addition, Trooper Covey observed several rifles, 3 military style 30-round banana clip ammunition magazines fully loaded, and a hay claw found in the cab compartment of the vehicle. The defendant was arrested for Risk of Injury (General Statutes § 53-21)[1], Weapons in a Motor Vehicle (General Statutes § 29-38), and Failure to Store Loaded Firearm (General Statutes § 29-37i).
The defendant claims that the initial stop and subsequent seizure of the knife were illegal in that Trooper Covey did not have probable cause to stop and search the vehicle; that the defendant was not required by law to display an emissions sticker and that since the vehicle was not equipped with a shoulder restraint seat belt, Trooper Covey could not have seen whether the defendant was properly wearing a lap-type seat belt. He further claims that there is insufficient evidence with which to continue prosecution of some of the charges.
II. Issues Presented
The defendant specifically argues in his motion to Dismiss and to suppress the following issues:[2]
1. Did the trooper have probable cause to stop the defendant's motor vehicle?
2. Did the officer have probable cause to search the defendant's motor vehicle after being told that the defendant was in possession of a weapon for which he had a permit?
3. Is Section 29-38 of the General statutes violated when CT Page 13173 there is a knife, the cutting edge of which is greater than four inches, in the vehicle without a showing that it was used, or attempted, or threatened to be used?
4. Is there sufficient evidence to warrant prosecution on a charge of Risk of Injury to a Minor?
5. Is there sufficient evidence to support the bringing of a charge pursuant to General Statutes 29-37b? The court will address them in the order presented.
1. Did the trooper have probable cause to stop thedefendant's motor vehicle?
The defendant's claim is that Trooper Covey did not have probable cause to stop his vehicle based on the fact that the pickup truck was being operated with a junk plate therefore he was not required to have an emissions sticker on the vehicle and that there were no shoulder seat restraints to be seen by Trooper Covey since the vehicle was not equipped with them. This claim lacks merit because: 1) the defendant's vehicle was not exempt from the requirements of the emissions statute; 2) even if it were, the trooper, upon not seeing an emissions sticker, was justified in detaining the defendant's vehicle to determine whether it was exempt from the statute; and 3) upon not observing a seat belt on the operator, the trooper was justified in briefly detaining the vehicle to determine whether the defendant violated General Statutes § 14-100a (Seat Safety Belts).
It cannot be reasonably argued that the police may not detain a motorist for violation of its state traffic regulations. See,State v. Aillon, 200 Conn. 385 (1987); State v. D'Ambrosia,14 Conn. App. 309 (1988); State v. Dukes, 209 Conn. 98 (1988). The defendant claims, however, that because a motor vehicle being operated with a junk plate is exempt from the requirements of the emissions statute, the absence of an emissions sticker would not give the trooper probable cause to detain him.
General Statutes § 14-164c(c) provides that all vehicles registered in this state shall comply with emissions standards defined by the commissioner of environmental protection. While certain vehicles are exempt from inspection and compliance, the defendant's vehicle does not fall within any of those exemptions.[3] The defendant maintains that because the vehicle was operated with a junk plate, it was not "registered" and CT Page 13174 therefore exempt from the emissions statute.
This claim is, however, defeated by the language in General Statutes § 14-671 concerning the licensing of junk dealers. That statute provides that a motor vehicle junk yard may apply to the commissioner of motor vehicles for the issuance of a junk yard license. The licensee, instead of registering each vehicle owned by him, is issued a number plate and certificate of registration containing that number and mark by the commissioner of motor vehicles. "[E]ach motor vehicle owned by such licensee shall be regarded as registered under such distinguishing number and mark." General Statutes § 14-671.(Emphasis added.) Because the vehicle is "registered" and not otherwise exempt, the defendant is required to comply with the requirements of General Statutes § 14-164c.
The trooper further had the right to stop the defendant in the absence of an emission sticker since the commissioner of motor vehicles has interpreted the emission statute to require a temporary emissions sticker to be placed on vehicles being operated with a junk plate. See, Connecticut Motor Vehicle Regulations § 14-164c-4.[4] In any event, the absence of an emissions sticker on a vehicle would give the officer the right to detain the motorist briefly to determine whether or not the vehicle was exempt from the requirements of General Statute §14-164c. Even if the defendant's vehicle is exempt from the clean air requirements of the emissions statute, he is still required to display a temporary emissions sticker. See, Connecticut Motor Vehicle Regulations § 14-164c-4. In this case, it is not disputed that there was no sticker of any kind on the defendant's vehicle. The trooper had probable cause to stop the defendant. It is unnecessary to address the issue of the shoulder seatbelt. There was probable cause to make the stop.
2. Did the officer have probable cause to search thedefendant's motor vehicle after being told that the defendant wasin possession of a weapon for which he had a permit?
Immediately after being stopped, the defendant promptly and properly reported to Trooper Covey that there was a loaded handgun in the vehicle. Upon hearing this, Trooper Covey had the defendant exit the vehicle, move to the rear of the vehicle and retrieved the gun. His declared purpose in doing so was to secure the weapon for his own safety, as well as the safety of the ten year old passenger and the other troopers, Dency and Cancellaro, CT Page 13175 who had arrived in a back-up capacity shortly after the initial stop, until his dealings with the defendant were concluded. It was while retrieving the handgun that Trooper Covey plainly observed within the truck, a K-bar style knife; several rifles; 3 military style, 30-round banana clip ammunition magazines fully loaded with 5.56 caliber ammunition; and a hay claw. A reasonable person might appropriately consider the vehicle to be a mobile arsenal of weapons.
Once a vehicle has been lawfully stopped, an officer is allowed to act reasonably to protect himself. Accordingly, an officer may make a protective sweep of a vehicle or "frisk" a subject who is believed to be armed and dangerous. Terry v. Ohio,392 U.S. 1, 88 (1968); Michigan v. Long, 463 U.S. 1032 (1983);State v. Kyles, 221 Conn. 660, 643 (1992); State v. Miery,543 Conn. App. 543 (1991).
In the Supreme Court case of Michigan v. Long, supra at 1047-1048, a case involving a motor vehicle infraction stop, the court stated:
 "In two cases in which we applied Terry to specific factual situations, we recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers. In Pennsylvania v. Mimms, 434 U.S. 106
(1977), we held that police may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous. Our decision rested in part on the "inordinate risk confronting an officer as he approaches a person seated in an automobile." Id., at 110...... Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.[14] See CT Page 13176 Terry, 392 U.S., at 21. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id., at 27.
The Connecticut courts have adopted this same reasoning. InState v. Escobales, 16 Conn. App. 272, 276 (1988) the court stated:
 Too often, police officers are mortally wounded following traffic violation stops. An officer should not be made to choose between his own safety and what could later be construed as an illegal search and seizure. Law enforcement personnel have enough responsibility and concerns confronting them when they approach a person they have pulled over, and we refuse to impose upon them a Hobson's choice of not making a limited intrusion where they believe a weapon is concealed when to do so greatly increases the risk that they will be shot. See United States v. Jackson, 652 F.2d 244, 249-50 (2d Cir. 1981).
The court concludes that Trooper Covey's actions upon learning of a loaded weapon in the motor vehicle were entirely reasonable and appropriate. While the defendant did possess a valid permit for the weapon, and did inform Trooper Covey of that fact, the trooper was justified in verifying that information independently. In so doing, and until that information could be verified, he acted reasonably to separate the defendant from the weapon during his dealings with the defendant. A loaded weapon is dangerous in and of itself whether its possessor has a permit to carry it or not. An armed person detained during a traffic stop may intentionally assault an officer. Since the knife was observed during the protective sweep of a vehicle filled with various other weapons, it shall not be suppressed. The trooper did have probable cause to do a protective search of the defendants vehicle. The defendants Motions to Suppress and To Dismiss are denied.
3. Is Section 29-38 of the General statutes violated whenthere is a knife, the cutting edge of which is greater than fourinches, in the vehicle without a showing that it was used, orattempted, or threatened to be used?
The defendant next claims that the charge of Illegal CT Page 13177 Possession of a Weapon in a Motor Vehicle, General Statutes §29-38, should be dismissed because there is no evidence that the knife was being "used or attempted to be used in a manner capable of causing death or serious physical injury". The defendant premises this claim on his assertion that the definition of dangerous or deadly weapon or instrument found in General Statutes § 29-38 is limited by the definition of dangerous instrument found in General Statutes § 53a-3 (7).
The question of whether the definition of "dangerous instrument" found in General Statutes § 53a-3 (7) applies to prosecutions under General Statutes § 29-38 appears to be one of first impression. The Supreme Court has held that the definitions set forth in the penal code (General Statutes §53a-3) do not apply to prosecutions for non penal code offenses.State v. Delossantos, 211 Conn. 258, 273-75 (1988) (Definition of "firearm"); State v. Hill, 201 Conn. 505, 515 n. 7 (1986) (Definition of "possess"). Cf. State v. Holloway,11 Conn. App. 665, 668-69 (1987) (Definition of "dangerous instrument" found in General Statutes § 53a-3 (7) applies to prosecutions under General Statutes § 53-206). While the state agrees that the definition of "dangerous instrument" found in General Statute § 53a-3 (7) applies to General Statute § 29-38; see,State v. Scully, 195 Conn. 668, 678 n. 14 (1985); State v.Holloway, supra; the issue is whether the definition creates an additional element in prosecutions under General Statutes §29-38. The court believes that it does not.
In a prosecution under General Statutes § 29-38, the state is required to prove: 1) that the defendant owned, operated, or accepted the vehicle; 2) that he had a weapon in the vehicle; 3) that he knew the weapon was in the vehicle; and 4) he had no permit or registration for the weapon. State v. Owens,25 Conn. App. 181, 186 (1991). There is no requirement that the state show that the defendant used, attempted to use, or threatened to use the weapon in a manner likely to cause death or injury.
The term "weapon" used in General Statutes § 29-38 is defined as "any other dangerous or deadly weapon or instrument including . . . knife, the edged portion of the blade of which is four inches or over in length. . ." Referring to nearly identical language in General Statutes § 53-206, the Appellate Court has said, "[t]he statute does not specifically enumerate all of the dangerous weapons which a person may not carry without a CT Page 13178 permit, but rather should be read to include, within its purview, the carrying of any dangerous weapon whether or not specifically listed." State v. Holloway, supra at 668. Like General Statutes § 29-38, General Statutes § 53-206 specifically enumerates various items which are prohibited. In General Statutes § 53-206, the list of items is followed by the words "or any other dangerous or deadly weapon or instrument." In General Statutes § 29-38, the words "dangerous or deadly weapon or instrument" is followed by the word "including" with the list of items. Most of the listed dangerous or deadly weapons or instruments are identical in each statute including the term "knife the edged portion of the blade of which is four inches or over in length."
The articles specifically mentioned are generally recognized as dangerous weapons per se. State v. Holloway supra; State v.Ryan, 23 Conn. Sup. 425, 428-29 (1962). It is obvious that there are many items not specifically mentioned which might be included within the scope of dangerous or deadly weapons or instruments if they are used or intended to be used as weapons. Articles which are manufactured for peaceful and proper uses may become dangerous and deadly weapons when they are used for assault or defense. State v. Holloway, supra. at 669; See also, Sutherland, Statutory Const., 5th Ed. § 47.17. Accordingly, the state would be required to prove that the item was being used as a weapon if it was not specifically prohibited by statute and the state claimed it was a "dangerous weapon". See, State v. Scully,
supra; State v. Holloway, supra. When the item is specifically defined as a deadly or dangerous weapon or instrument, the state is not required to prove that it was used, intended to be used, or threatened to be used in a manner likely to cause serious injury or death. Accordingly, the defendant's Motion to Dismiss this count is denied.
4. Is there sufficient evidence to warrant prosecution on acharge of Risk of Injury to a Minor?
The statute under which the defendant has been charged reads as follows:
 Sec. 53-21. Injury or risk of injury to, or impairing morals of, children. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair CT Page 13179 the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both. (1949 Rev., S. 8369.)
In the case of State v. Dennis, 150 Conn. 245, 188 A.2d 65
(1963), the Supreme Court analyzed this statute and determined that there were two very distinctive portions of the statute, one portion, the first, requires specific intent on the part of the accused and the second part requires only a general criminal intent, it does not require specific intent.
 "The apparent legislative purpose in combining the two parts in a single section was to proscribe two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare; see State v. Smith, 149 Conn. 487, 181 A.2d 446; and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. See State v. Coulombe, 143 Conn. 604, 124 A.2d 518; State v. Silver, 139 Conn. 234, 93 A.2d 154. The legislature undoubtedly had in mind acts of such a nature that a general criminal intent could be inferred from them. See Proctor v. United States,
85 U.S. App. D.C. 341, 342, 177 F.2d 656; State v. Johnston, 207 La. 161, 169, 20 So.2d 741; Steele v. State, 189 Tenn. 424, 430, 225 S.W.2d 260; 1 Wharton, Criminal Evidence (12th Ed.) 131." State v. Dennis, at 250.[5]
It is the state's position that the defendant's conduct in placing his ten year old son in such close proximity to dangerous weapons (including the loaded handgun, hay claw, rifles, knife, and other ammunition) falls within the purview of the statute. The court does not agree.
This statute cannot be analyzed in this instance without reference to General Statute 29-37i. This statute speaks to the issue of loaded weapons and minors. It provides:
Responsibilities re storage of loaded firearms with respect to minors. No person shall store or keep any loaded firearm on any premises under his control if he knows or reasonably should know that a minor is likely to gain access to the firearm without the permission of the parent or guardian of the minor unless such person (1) keeps the firearm in a securely locked box or other CT Page 13180 container or in a location which a reasonable person would believe to be secure or (2) carries the firearm on his person or within such close proximity thereto that he can readily retrieve and use it as if he carried it on his person. For the purposes of this section, "minor" means any person under the age of sixteen years.
This statute indicates that it is permissible to have a loaded firearm in the vicinity of a minor provided that the weapon is locked or within the close proximity of the adult. This statute implicitly suggests that, with supervision, it is not illegal to have loaded weapons in the presence of minors.
We presume that laws are enacted in view of existing relevant statutes and that the legislature intended them to be read together so as to constitute one consistent body of law. Dept. ofAdministrative Services v. Employees' Review Board,226 Conn. 670, 679, 628 A.2d 957 (1993). If there are two possible interpretations of a statute, this court must adopt the more reasonable construction. Jones v. Mansfield Training School,
supra, 220 Conn. 726. Pollio v. Planning Commission 232 Conn. 44,55 (1995) ___ A.2d ___
It is an often stated proposition that in construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. Stoni v. Wasicki, 179 Conn. 372, 376-77, 426 A.2d 774
(1979). Justice Cardozo once said: "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be construed, if possible, that absurdity and mischief may be avoided. In re Rouss, 221 N.Y. 81, 91, 116 N.E. 782 (1917)." Kingv. Board of Education, 203 Conn. 324, 332 (1987) 524 A.2d
This court holds that it would not be consistent with the legislative scheme, nor would it be consistent with common sense to hold that a father commits the crime of Risk of Injury to a Minor when he permits his son, under the father's supervision and control, to be in the mere presence of otherwise legal weapons. This section of the statutes was designed to proscribe two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age, neither of these proscribed activities has occurred under the facts presented by this case. The defendant's Motion to Dismiss this charge is granted. CT Page 13181
5. Is there sufficient evidence to support the bringing of acharge of Failure to Store Loaded Firearm Pursuant to GeneralStatutes 29-37b?
The information in this matter charges the defendant with a violation of General Statutes § 29-37b. This was apparently a typographical error on the information as the police report indicates that the defendant was to be arrested for a violation of General Statutes § 29-37i (Responsibilities re storage of loaded firearms with respect to minors.) Because the firearm was not found on "premises" under control of the defendant but rather in a vehicle being operated by him, the state concedes that this charge should be dismissed. Accordingly, the defendant's Motion to Dismiss this charge is also granted.
Foley, J.