## BUFFALO INSURANCE COMPANY v.
## UNITED PARKING STATIONS, INC.

152 N. W. (2d) 81.

June 23, 1967—No. 40,447.

*Tyrrell, Jardine, Logan & O'Brien* and *Robert A. Nicklaus*, for appellant.

*Levin, Sinykin & Efron* and *Sidney L. Levin*, for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the municipal court of Minneapolis dismissing plaintiff's action and from an order denying plaintiff's motion for a new trial.

The case involves a subrogation suit brought by an insurer to recover damages paid to its insured as a result of a theft loss while his car was

parked in defendant's parking lot. Anthony Joseph Conroy, Jr., was insured under a family automobile policy with plaintiff, Buffalo Insurance Company. On August 7, 1963, Conroy's Chevrolet was missing when he looked for it at about 7 p. m. at the parking lot of defendant, United Parking Stations, Inc. He claimed that he parked it at defendant's lot sometime between noon and 1:30 p. m. that day. He reported it stolen to the authorities; 9 days later it was discovered in a field, in a damaged condition.

Conroy had parked his car at defendant's lot from time to time since 1956. Commencing April 22, 1963, he had parked it by virtue of a written agreement with the defendant, about which plaintiff was not informed prior to trial. The lot closed at 5:30 p. m. each day, and a sign to this effect was posted in the window of the attendant's house. According to Conroy, "it was mandatory to leave your keys in the car at any time that I was parking." He claimed this information came from an attendant. No such requirement appears in the agreement. Edward A. Sloane, president of defendant, testified that patrons of the lot where Conroy said he parked his car that day were not required to leave their keys because it was not necessary to move the cars around to get other cars out. In any event, Conroy said that he "presumed" that he left the keys in the ignition on the day the car was stolen.

After the car was recovered it was repaired at the Champion Chevrolet Company garage. Conroy described the damages to the car and the repairs made. He testified that Buffalo gave Champion $327 for the repairs and gave him a check for $94 to cover rental of a Hertz car during the time he was without his car, and that he thus received payment for all his losses resulting from the theft of his car. He said that he did not sign anything or give Buffalo any document at the time this money was paid. At that point in the trial defendant moved for a directed verdict on the grounds that plaintiff had failed to prove a cause of action as the assignment of interest alleged in the complaint was not proved and there was no proof of the exact amount to which Buffalo could be subrogated. The following discussion then took place:

"The Court: Well, the complaint alleges in paragraph eight that on October 18th, 1963, the plaintiff paid to Mr. Conroy $420.52. What evidence

do you have to show that, Mr. Nicklaus? You must have something here and that there was an assignment by this company.

"Mr. Nicklaus [Buffalo's attorney]: Well, as far as the amount that was paid, I think the witness has clearly testified that he was paid that amount. I don't see what other testimony is needed to show that he was paid that amount.

\* \* \* \* \*

"The Court: Why is that such a difficult thing on your part in producing documents that are fundamental?

\* \* \* \* \*

"Mr. Nicklaus: —in conjunction with the policy and the testimony has been given and I think it is clearly shown that there is no need for a written assignment.

"The Court: But there is, and I am going to so hold and unless you produce it you are out of court."

Plaintiff's attorney read, with the court's consent, an excerpt from the policy, which provided:

"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

He requested that the record show that Buffalo waived the requirement under that paragraph that Conroy execute a written document assigning his rights to the company. Buffalo took the position that in accepting payment for the loss Conroy had in effect complied with the paragraph. After further discussion in which the court indicated its view that Buffalo should produce a written assignment, counsel for Buffalo informed the court that Conroy had never entered into any written assignment.

"The Court: \* \* \* He certainly got checks.

"Mr. Nicklaus: Yes.

"The Court: And endorsed them and you must have them at the home office of this insurance company, wherever it is.

"Mr. Nicklaus: The checks, Your Honor?

"The Court: Yes, I assume, showing that he received it. Why aren't they here this morning?

"Mr. Nicklaus: Your Honor, maybe I am missing the point, but I think that if he has testified that he received this money from them, the actual written evidence that a check was given or cash was given is immaterial.

"The Court: Well, the defendant has made an issue—

"Mr. Nicklaus: On the assignment, Your Honor.

"The Court: Yes, and on the payment. He is entitled to know who the suit is being brought by, whether it's a party that is in a position to bring it legally, and he hasn't been satisfied on that yet; at least, that's his position.

\* \* \* \* \*

"The Court: If you need any more time—if you want some time to get this evidence together, I would be willing to listen to a motion to ask for it, but you must have, certainly, somewhere in the United States— the home office of this company—the evidence to show Mr. Sinykin [defendant's attorney] that Buffalo paid out some money on this loss."

In concluding its case, Buffalo again stated that it waived any requirement for a written or oral assignment of his interest from Conroy. It also moved to amend the complaint to bring it in conformity with the testimony and the waiver. The court held that the motion was not in proper order as it was incumbent on Buffalo to show it made the payments, which it had not done. Counsel for Buffalo then asked if the court's position was that Conroy was not telling the truth. Defendant objected that his testimony was not the best evidence and the court stated, "I would think the best evidence, as counsel says, would be the checks that you paid out. I don't understand why they are not here." The court then dismissed without prejudice, defendant objecting that it should be with prejudice since plaintiff's counsel had informed the court that plaintiff had no documentary evidence either as to payment or assignment of any claim Conroy had against United and thus had failed to prove the action alleged in its complaint. After inquiry during the noon hour plaintiff's counsel ascertained that there definitely had been no written assignment, whereupon the court ordered the dismissal to be with prejudice.

The court found that Buffalo failed to prove that it paid the claimed $420.52 and failed to produce an assignment from Conroy as alleged in its complaint and as provided for in its policy and concluded that it had failed to prove a cause of action against defendant and that defendant was entitled to a dismissal with prejudice as a matter of law. The court ordered judgment accordingly, and Buffalo thereafter moved for amended findings or for a new trial, which motion was denied. In a memorandum accompanying its order, the court stated that plaintiff alleged in its complaint that there was in existence an assignment by Conroy to plaintiff of all his rights againt defendant; that plaintiff did not produce this assignment and at the trial informed the court there was none; that in an affidavit by plaintiff's attorney attached to the moving papers it was recited that there was such an assignment; but that no reason was shown why such an assignment could not have been found and produced at the trial.

A review of the record satisfies us that the trial judge made every effort to be fair in the conduct of the trial, even to the point of informing Buffalo's attorney that if he wanted further time "to get this evidence together," the court would hear such a motion.

Although the amount involved here is small, the case is important. The court and defendant adopted the position that the best-evidence rule restricted proof of Buffalo's payment to Conroy to the actual production of the canceled checks, in spite of Conroy's testimony that the amount of his loss was paid in full by Buffalo. As between Conroy and Buffalo, there is no dispute. The problem is that defendant would not accept Conroy's testimony but insisted that the canceled checks be produced as the best evidence. Defendant does not deny that it owes Buffalo some amount but contends the alleged assignment of Conroy's interest and the payment by Buffalo were not proved by documentary evidence.

In connection with the so-called best-evidence rule, there are some cases in which the broad statement is made that a party must produce the best evidence of which the case is susceptible. This appears to be true only in regard to the contents of writings. The present "best-evidence" rule is merely a name for the rule which requires the contents of a writing to be proved by the writing itself if it is available. It is not a broad, general principle applicable throughout the law of evidence. A party is not required

to produce the best, in the sense of the most trustworthy and credible, evidence at his command. "He may prove his case by weak and inconclusive circumstantial evidence though he may have in his power clear, direct, and conclusive evidence. He may, for example, prove marriage by circumstantial evidence though he may have in his possession the marriage certificate or might produce witnesses who were at the ceremony. * * * A party is compelled to produce the best evidence at his command only in one class of cases. If he wishes to prove the contents of a writing he must do so by producing the writing itself." 7 Dunnell, Dig. (3 ed.) § 3264, and cases cited. The best-evidence rule goes only to the competency of evidence, not to its relevancy, materiality, or weight, and objections to its competency may be removed. Stevens v. Minneapolis Fire Dept. Relief Assn. 219 Minn. 276, 17 N. W. (2d) 642. The cost of a thing may be proved by opinion evidence even though it is possible to produce the builder or one having personal knowledge of the cost. Kempf v. Ranger, 132 Minn. 64, 155 N. W. 1059. The execution or contents of a lost deed may be proved without first producing the subscribing witnesses. Berryhill v. Clark, 137 Minn. 135, 163 N. W. 137.

Applying the foregoing principles to the instant case, plaintiff in its attempt to prove payment of Conroy's loss and thus its right to subrogation of his claim against United did not produce the most conclusive evidence, namely, the canceled checks or an assignment. However, it is our opinion under the record here that the testimony of Conroy, undisputed by Buffalo, that it did pay his loss was sufficient to raise a fact question as to whether payment was actually made, and the amount paid. The matter should have been decided on its merits.

While we do not condone Buffalo's neglect to have the canceled checks in court — or to ask for a continuance until they could be produced as suggested by the trial court — we can see where plaintiff might have considered, from Conroy's testimony that his claim was paid in full and from the subrogation clause in the policy, that the evidence was sufficient to create a fact issue sufficient to permit the court to decide the case on the merits.

Reversed and new trial granted.