**Leo James HENSON, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 5878.**

District of Columbia Court of Appeals.

Argued Nov. 10, 1971.

Decided Feb. 7, 1972.

Rehearing En Banc Denied March 7, 1972.

---

Matthew W. Black, Jr., Washington, D. C., appointed by the court, for appellant.

Harry J. McCarthy, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and David M. Bullock, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, REILLY and YEAGLEY, Associate Judges.

REILLY, Associate Judge:

This is an appeal from a conviction of obtaining property under false pretenses in violation of D.C.Code 1967, § 22–1301. The incident on which the information was based occurred on September 6, 1969, on

which date appellant was charged with effectuating the purchase of some $79 worth of groceries at a local supermarket by drawing a check in its favor on the National Bank of Washington, appellant knowing that such check was worthless as he had no current account there. The check was dishonored and returned to the payee.

On January 15, 1970, on the complaint of the store, a warrant for appellant's arrest was issued—efforts to get in touch with appellant at the two addresses and place of employment he had given at the time of the sale having been fruitless. This warrant, however, was not served upon appellant until some 13 months later, on March 10, 1971, when he was in police custody by reason of an arrest for a traffic offense committed earlier that morning. Apparently the outstanding warrant was discovered when he was at the police station, and the United States Attorney filed an information under § 22–1301 forthwith. Appellant was unable to obtain bail and was jailed to await trial.

In preliminary proceedings appellant moved to dismiss on grounds of prejudicial prearrest delay. He renewed the motion on April 16, 1971, immediately prior to trial, arguing that "once a meritorious claim of denial of speedy trial has been raised, the burden becomes the Government's to prove that defendant has not been prejudiced." The court responded that the burden of showing prejudice was on the defendant and denied the motion.

At trial, the same day, Leroy Carter, owner and manager of the supermarket, and Donald Potter, a security employee, testified that on September 6, 1969, appellant had bought groceries at the supermarket and drew a check to pay for the items he was about to take out. Both witnesses remembered the transaction. Because the amount involved was unusually large, they required the customer to present identification cards before they decided to accept the check. Each witness swore that the

drawer was the same man seated in court as the defendant, viz., the appellant.

John Crawley, cashier of the National Bank of Washington, was called by the Government to the stand. He produced certain bank records, including an account statement and signature card in appellant's name and disclosing that the signatory closed out such account on February 19, 1969—more than six months before the grocery transaction in issue. Robert L. Pleger, a detective attached to the Check and Fraud Unit of the Metropolitan Police Department, testified that he had been unable to find in the police files the original check referred to in the information. The court excluded a document proffered as a photostatic copy of the check.

After a motion for acquittal was denied, appellant then moved into evidence an affidavit of Potter, on which the arrest warrant was issued, for the purpose of showing that Potter was unwilling or unable at the time he made it out to provide a description of the offender as requested by the form. He also asserted that the document disclosed that (1) appellant was never served with written notice of the offense, and (2) an inconsistency between the amount of the check testified to by Carter and the amount shown in the affidavit. Appellant did not testify or call any witnesses in his defense.

 In this court, appellant assigns as error the trial court's refusal to grant the motion to dismiss, contending that appellant was thereby deprived of his constitutional right to a speedy trial as guaranteed by the sixth amendment. Pointing out that there was a 19-month interval between the asserted date of the offense and the trial —including a lapse of more than a year between the issuance and execution of the arrest warrant, appellant argues that a pretrial delay of this length makes it incumbent upon the Government to prove that appellant was not prejudiced thereby. Appellant relies on a number of reported decisions in this jurisdiction lending support to

his thesis that the right to a speedy trial embraces the period from the date of the offense to trial, rather than the period between arrest or information and the trial date, citing, *inter alia,* Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), and Mann v. United States, 113 U. S.App.D.C. 27, 304 F.2d 394, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). Two decisions of this court also seem to accept this proposition, United States v. Young, D.C.App., 237 A.2d 542 (1968); Bond v. United States, D.C.App., 233 A.2d 506 (1967).

Since this case was argued, however, the Supreme Court has made it clear that for the purpose of appraising an asserted denial of speedy trial rights under the sixth amendment, a defendant may complain only of the time intervening between the day he was arrested or indicted and the day trial begins, United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).[1] Presumably in a misdemeanor case, the crucial period begins with the filing of the information, unless the accused is already under arrest. In the case now before us the date of service of the arrest warrant and the information coincided. As the trial was held less than five weeks thereafter, appellant was obviously not deprived of any sixth amendment rights, as defined in the *Marion* opinion.[2]

Conceivably, it might be argued that even under *Marion* standards, this court should consider not just the time between actual arrest and trial, but the period beginning with the issuance of the warrant because at one point the court refers to

speedy trial guarantees as "applicable only after a person has been accused of a crime" (at 307, 92 S.Ct. at 457). This seeming ambiguity is cleared up, however, by other language in the opinion, stating "that it is either a formal indictment or information or else the *actual restraints imposed by arrest and holding to answer a criminal charge* that engages the particular protections of speedy-trial provision of the Sixth Amendment" (*Id.* at 320, 92 S.Ct. at 463, italics supplied). Moreover—as if in answer to the contention that the delay in serving the warrant was unreasonable and should have been explained by the prosecution—the Supreme Court in the same opinion quoted with approval a commentator's observation—

. . . To recognize a general speedy trial right commencing as of the time arrest or charging was possible would have unfortunate consequences for the operation of the criminal justice system. Allowing inquiry into when the police could have arrested or when the prosecutor could have charged would raise difficult problems of proof. . . . (at 321, n. 13, 92 S.Ct. at 464).[3]

Appellant also contends that there was insufficient evidence on which to find him guilty beyond a reasonable doubt. This contention is predicated on two propositions, (1) that the testimony identifying appellant was incredible, and (2) that evidence of the contents of the check was insufficient, given the exclusion of the copy thereof from evidence.

■ We find little merit in the first proposition. Appellant characterizes the

1. *See* Nickens v. United States, 116 U.S. App.D.C. 338, 323 F.2d 808 (1963), cert. denied, 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964), and cases collected at 808–809.

2. Appellant argues that the delay between the service of the arrest warrant and the date he was said to have defrauded the store constituted a "claim of inability to recall". As he neither took the stand at the pretrial motion or at the trial itself, we cannot disagree with the trial

judge's finding of "no evidence in the record that would indicate any prejudice".

3. In a recent decision, this court has indicated that United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), deprives prior views of this court, such as those expressed in Bond v. United States, D.C.App., 233 A.2d 506 (1967), of any precedential value. United States v. Kramer, D.C.App., 286 A.2d 856 (decided February 1, 1972).

in-court identification by Carter and Potter as inherently incredible because their tesimony was not consistent regarding the number of times each had observed appellant before September 6, 1969,[4] and asserts that some 19 months later they were simply relying on the fact that appellant was at counsel table. But we have little difficulty in understanding how one of the store's staff might have noticed a particular customer more than another. In any event, the question resolving credibility was within the competence of the trial judge.

Finally, appellant asserts that given the exclusion of the photostated copy of the check from the record, the court under the best evidence rule should have disregarded the oral testimony of Carter and Potter, because that was secondary evidence offered by the party responsible for the loss of the original document.[5]

■ Of course, the best evidence rule— if a document is not available—does not require the trial judge to exclude a copy of the missing paper unless he finds that the unavailability of the original is due to design or negligence chargeable to the party offering it. It is not clear on this record that the rejection of the photostatic copy was due to a belief that the prosecution was at fault in not producing the original, for the court remarked that the proffered copy was barely legible and would make it difficult to compare handwriting should the defense take the position that the drawer's signature was forged. Inspection of the excluded photostat discloses that the trial court's misgivings were well founded, for the once fair face of the instrument was indelibly scarred by the imprints of rubber stamps—placed there presumably by the bank—partially obliterating the signature and the amount payable, and leaving in bold relief only the suggestive word— "closed".

■ Moreover, the best evidence rule does not necessarily mean that no evidence can be received with respect to a particular transaction, unless the writing proving such transaction is introduced. The requirement that the document itself is the *sine qua non* applies only when the terms of the document are essential, in contradistinction to other facts about the document. Such facts may be proved orally without a proffer of the writing itself. Wigmore on Evidence, § 1242.[6]

■ In this context, whether a document must be produced depends on what relevance the terms of the writing bear to the issues in the case. Wigmore, *supra,* §§ 1245, 1247. The essence of the crime for which appellant was convicted is obtaining something of value through a false representation. Gilmore v. United States, 106 U.S.App.D.C. 344, 347, 273 F.2d 79, 82 (1959). Here the specific terms of the check were not material for the false representation alleged is that the drawer had an account at the bank. Obviously such representation was implied and was not a part of the instrument itself. Thus, the best evidence rule was not applicable, and oral testimony was properly considered in arriving at the verdict. Buffalo Insurance Co. v. United Parking Stations, Inc., 277 Minn. 134, 152 N.W.2d 81 (1967) (insurer entitled to establish right of subrogation on oral testimony of insured victim of theft); Butts v. Maryland Casualty Co., 52 Ga. App. 838, 184 S.E. 774 (1936) (payment by check may be testified to without producing cancelled check).

Affirmed.

---

4. Appellant also calls to our attention the conflicting testimony as to the amount of the check. The amount of the check, however, is not an element in the case— a check for any amount would come within the statute—and the differing testimony seems to stem from the illegibility of the excluded copy.

5. The Government was unable to explain the loss of the original check, and Potter testified that he had not seen the check since giving it to the check squad.

6. Vol. 4 at 464 (3d ed. 1940).