## STATE OF CONNECTICUT *v.* MICHAEL MILLER
### (AC 23769)

Lavery, C. J., and Flynn and McLachlan, Js.

Argued February 18—officially released July 13, 2004

*Robert F. Field,* public defender, for the appellant (defendant).

*Ronald G. Weller,* assistant state's attorney, with whom, on the brief, was *Walter D. Flanagan,* state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Michael Miller, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commis-

sioner of correction for a period of 120 days. On appeal, the defendant claims that there was insufficient evidence for the court to have found that he violated the terms of his probation and that the court improperly found that the beneficial purposes of probation were no longer being met. The defendant also claims that the court improperly denied his motion to dismiss. We affirm the judgment of the trial court.

The record reveals the following relevant facts. On November 10, 1999, the defendant pleaded guilty to violating a protective order in violation of General Statutes § 53a-110b, now General Statutes § 53a-223. The court, *Carroll, J.*, sentenced the defendant to the custody of the commissioner of correction for a period of six months, execution suspended, and one year probation. In addition to the standard conditions of probation, the court also ordered that the defendant engage in no assaultive behavior.

After being sentenced, the defendant reported to the office of adult probation, where he met with Heather Adams, a probation officer. There, Adams reviewed a form with the defendant that listed the conditions of his probation. Included in the defendant's conditions of probation were that he report to his probation officer as directed and keep his probation officer informed of his whereabouts, including where he resided and where he was employed. After being informed of the conditions of his probation, the defendant signed the form, indicating that he understood the conditions of his probation and that he would abide by them.

The defendant was then assigned Chris Langrock as his probation officer. On December 22, 1999, Langrock met with the defendant to obtain certain information, including the defendant's telephone number, place of residence and place of employment. The defendant provided Langrock with two addresses in Danbury for his

place of residence and identified Home Health Care in Brookfield as his place of employment. Following the meeting, the defendant was instructed to report to Langrock on January 18, 2000.

Langrock subsequently attempted to verify the information that the defendant provided to him. Langrock attempted to call the defendant at both addresses he provided for his place of residence. In each instance, Langrock was informed that the defendant was no longer residing there. Langrock was unable to call Home Health Care in Brookfield because he was unable to find a business under that name in Brookfield. Langrock then mailed a letter to each address that the defendant provided as his place of residence. Each letter was returned to Langrock from the post office as undeliverable because the defendant did not reside at the address.

The defendant failed to report to his scheduled meeting with Langrock on January 18, 2000, whereupon Langrock began to prepare a warrant for the defendant's arrest for violating the terms of his probation. On February 7, 2000, the defendant called Langrock to inform him that he had moved and gave Langrock his new address and telephone number, which Langrock noted in the defendant's file. Langrock then informed the defendant that he was in the process of obtaining an arrest warrant for the defendant for violating the terms of his probation. The court, *Resha, J.*, signed the warrant for the defendant's arrest on February 9, 2000. The office of adult probation did not hear from the defendant again until October 21, 2002, when he turned himself in on the warrant for his arrest.

Following a hearing on the defendant's violation of probation, the court, *Fischer, J.*, found the defendant in violation of probation and sentenced him to the custody of the commissioner of correction for a period of 120 days. This appeal followed.

I

The defendant first claims that there was insufficient evidence for the court to have found that he violated the terms of his probation and that the court improperly found that the beneficial purposes of probation were no longer being met. We disagree.

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing. . . .

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . .

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness

of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185–86, 842 A.2d 567 (2004).

We will first address whether the court's finding that the defendant violated the terms of his probation was clearly erroneous. We will then address whether the court abused its discretion when it revoked the defendant's probation.

### A

The defendant claims that the court improperly found that he violated the terms of his probation. It is the defendant's contention that the state failed to prove by a preponderance of the evidence that he provided his probation officer with an improper address for his place of residence and an improper address for his place of employment. We disagree.

### 1

The defendant claims that the court's finding that he violated the terms of his probation by providing his probation officer with an improper address for his place of residence was clearly erroneous. We disagree.

In finding that the defendant provided his probation officer with an improper address for his place of residence, the court stated in relevant part: "The defendant was convicted . . . on November 10, 1999. Thereafter, he . . . signed the conditions of the probation and he knew the conditions of probation. Among them was that he had to report as directed, and he had to keep the probation officer notified as to his change of address. . . . He was not living at 28 Rose Street, as documented by the return of the letter sent by the probation officer. I understand the claim that his address at [the department of motor vehicles] is shown

as 28 Rose Street, but [the] testimony presented by the defendant himself [was that] he changed addresses during that period of time, and that's not noted on the [department of motor vehicles printout], so, therefore, I find he's in violation of the conditions of probation."

Our review of the record reveals that the court's finding was not clearly erroneous. There was sufficient evidence before the court for it to find that the defendant did not keep his probation officer informed of where he was residing.

The defendant argues that "the only evidence the court had before it was the official documentation of the motor vehicle department's computer system indicating that [his] address had been 28 Rose Lane, unit forty-two,"[1] and the testimony of his mother-in-law, who testified that she had sent a letter to the office of adult probation to inform it that he was changing his address.

In addition to the testimony presented by the defendant, however, the court also heard the testimony of Langrock, the defendant's probation officer. Langrock testified that he had met with the defendant on December 22, 1999. During that meeting, Langrock obtained certain information that was necessary to supervise the defendant on probation. Among that information was the address where the defendant was residing. The defendant informed Langrock that he was residing at "28 Rose Lane, unit forty-two, Danbury" and that he was also residing with a girlfriend at "63 Grand Street, Danbury." In addition to obtaining the defendant's place of residence, Langrock obtained the telephone number for each address.

---

[1] The defendant presented the testimony of Al Almeida, an investigator with the public defender's office. Almeida testified that he had searched the Connecticut operator's license information computer, which indicated that the department of motor vehicles listed the defendant's address as "28 Rose Lane, Danbury."

Langrock testified that he noted in his file that the defendant "was very secretive about where he lives, would not give me his telephone number or any other information until I threatened a warrant [for violating the terms of his] probation . . . if he continued to fail to provide this information." Following his meeting with the defendant, Langrock testified, he attempted to call the telephone numbers that the defendant provided for him as his place of residence. After speaking with the individuals who answered the telephone at each location, Langrock did not believe that the defendant was residing at either 28 Rose Lane or 63 Grand Street, as the defendant had indicated.

Langrock also testified that on December 28, 1999, he sent letters to 28 Rose Lane and 63 Grand Street, instructing the defendant to immediately report to the office of adult probation. Each letter was returned to the office of adult probation by the post office, stamped "return to sender, attempted, not known." The letter sent to the 63 Grand Street address also had written on it, "Doesn't live here."

In addition, Langrock testified that he never received a letter from the defendant's mother-in-law indicating that the defendant was moving. Langrock also testified that if a letter was sent to the office of adult probation, it would have been forwarded to him and placed in the defendant's file. There was, however, no letter in the defendant's file from the defendant's mother-in-law informing the office of adult probation that he was moving from 28 Rose Lane.

"[E]vidence is not insufficient . . . because it is conflicting or inconsistent. [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder]

can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Gauthier*, 73 Conn. App. 781, 787, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

As the finder of fact, the court was entitled to arrive at its own conclusion on the credibility of the witnesses and the weight of the evidence. Because there was evidence before the court to support its finding that the defendant provided his probation officer with an improper address for where he resided, the court's finding that the defendant violated his probation was not clearly erroneous.[2]

2

The defendant next claims that the court's finding that he violated the terms of his probation by providing his probation officer with an improper place of employment was clearly erroneous. We disagree.

In finding that the defendant provided his probation officer with an improper name and address for where he was employed, the court stated: "[The defendant] signed the conditions of probation, and he knew the conditions of probation. Among them was that he had to report as directed, and he had to keep the probation officer notified as to his change of address. In that regard, he gave misleading information as to what his job was, using a different town and a different name for the job."

After reviewing the entire record, we conclude that the court's finding was not clearly erroneous. Langrock

---

[2] Although the defendant provided Langrock with two addresses as his place of residence, the court's decision and the defendant's brief do not mention the 63 Grand Street address. We therefore limited our review of the court's decision to the defendant's having provided Langrock with 28 Rose Lane as the defendant's place of residence.

testified that during his meeting with the defendant on December 22, 1999, the defendant informed him that he was working for Home Health Care in Brookfield. Langrock testified that following that meeting, he attempted to contact the defendant's place of employment. He testified that he called directory assistance to obtain a telephone number for Home Health Care in Brookfield. Directory assistance informed Langrock that it did not have a listing for a Home Health Care in Brookfield.

At the revocation of probation hearing, the defendant called as a witness Monsoor Haidary, vice president and part owner of Home Health Care Pavilion, Inc., located in New Milford. Haidary testified that the defendant had worked for Home Health Care Pavilion, Inc., from December 17, 1999, through January 21, 2000. On cross-examination, however, Haidary testified that his company did not have any offices in Brookfield and that Home Health Care Pavilion, Inc., is not affiliated with Home Health Care.

Although the defendant may have been working at Home Health Care Pavilion, Inc., in New Milford, the testimony adduced at the hearing revealed that he had told Langrock that he was working at Home Health Care in Brookfield. The conditions of the defendant's probation required that he keep his probation officer informed of his whereabouts, including where he was employed. By telling Langrock that he was employed in Brookfield when he was actually employed in another town by a facility with a name different from that which he provided to Langrock, the defendant did not keep his whereabouts known to the office of adult probation. Accordingly, we conclude that the court's finding that the defendant provided misleading information as to his place of employment was not clearly erroneous.

Although the defendant argues that the evidence showed that he was living in Danbury throughout the

duration of his probation, was employed, was not arrested while on probation and did not commit any assaultive behavior, that does not negate the findings of the court. The conditions of the defendant's probation required him to keep his probation officer informed of his whereabouts, including his place of residency and place of employment. The defendant failed to keep the office of adult probation informed of his whereabouts from February 7, 2000, until he turned himself in on October 21, 2002. There was sufficient evidence before the court for it to find that the defendant had failed to comply with both conditions.

B

The defendant also claims that the court improperly revoked his probation because the beneficial purposes of probation were no longer being met. We disagree.

As previously discussed, the court found that the defendant violated the terms of his probation. Thereafter, the court revoked the defendant's probation and sentenced him to the custody of the commissioner of correction for a period of 120 days. In revoking the defendant's probation, the court stated: "I find that the conditions of probation are no longer being met by this, given your record, given the conduct I saw here."

"On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Bordeleau*, 72 Conn. App. 33, 41, 804 A.2d

231 (2002). As we have stated, the court is vested with broad discretion in determining whether to revoke a defendant's probation, and we will not disturb a court's decision revoking a defendant's probation unless "an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 268 Conn. 186.

The defendant argues that the court improperly revoked his probation and sentenced him to a period of incarceration when the evidence before the court revealed that he was a "model citizen" from the time his probation officer found him in violation of his probation until the time of his revocation hearing, a period of nearly three years. The defendant relies on the testimony adduced at the hearing that he had reconciled with his wife,[3] that he had not been arrested or been involved in any assaultive behavior and that he was employed. On the basis of this, the defendant argues that the "court could not have reasonably come to a conclusion that the beneficial purposes of probation had not been served . . . ."

In support of his claim, the defendant relies on our decision in *State* v. *Cooley*, 3 Conn. App. 410, 488 A.2d 1283, cert. denied, 196 Conn. 805, 492 A.2d 1241 (1985). His reliance, however, is misplaced. In *Cooley*, the defendant was found guilty of breach of the peace. Id., 411. As a condition of her probation, the defendant was required to receive "some type of therapeutic or psychiatric counseling . . . if recommended by the probation officer." (Internal quotation marks omitted.) Id. The defendant subsequently was arrested for failure to comply with that condition of her probation. Id., 412. After being arrested, the defendant filed an application

---

[3] The defendant was placed on probation for violating a protective order. The protective order arose out of a domestic incident involving the defendant and his wife.

for a sentence modification, seeking to remove the condition of probation requiring her to receive counseling. Id. A hearing was then held on the violation of probation and the defendant's motion for sentence modification. Id. At the hearing, the defendant presented a psychological assessment by a psychologist with the court's diagnostic clinic, which concluded that there was nothing to suggest that the defendant "was psychiatrically disturbed or in need of psychiatric intervention." Id. The court, *Wagner, J.*, granted the defendant's motion for sentence modification "on an interim basis reserving my right to reinstate it." (Internal quotation marks omitted.) Id. Subsequently, on a renewal by the state of its claim that the defendant had violated the condition of probation, the court, *Klaczak, J.*, found that the defendant's probation should be revoked. Id., 413.

On appeal, the defendant claimed that it was an abuse of discretion by the court to revoke her probation when "the only evidence as to the underlying need for the condition was that it was not necessary." Id. We held that even if the defendant violated the terms of her probation, the trial court "could not have reasonably concluded that the beneficial purpose of it retained any of its original efficacy" because the court had before it "evidence of the condition's lack of any rehabilitative value [and] it was aware of an interim trial court ruling which had . . . temporarily suspended the need for the defendant to adhere to the condition." Id., 414.

In *Cooley*, we stated: "If a failure to comply with a condition of probation arises from sheer contumacy based upon a defendant's own assessment that a judicial condition of probation is meritless and the court's inquiry leads to no other conclusion, probation should be revoked. If, however, the condition serves no rehabilitative purpose and there is undisputed evidence that the condition was unnecessary at its inception, or was without any beneficial purpose as of the date of the

hearing, reasonableness of a revocation of the probation is lacking." Id., 414–15.

In this case, however, the court did not have before it any evidence that the conditions of probation the defendant was found to have violated lacked any rehabilitative value, nor was there any interim ruling that suspended the need for him to comply with those conditions. The defendant has provided us with no authority to support his argument that there is no rehabilitative purpose for requiring a probationer to keep his probation officer notified of his place of residence and employment.

We therefore conclude that the court did not abuse its discretion when it revoked the defendant's probation. The court had before it the defendant's long criminal history, which dated back to 1987, and included violations of protective orders, failures to appear, criminal trespasses, assault and breach of the peace. See State v. Young, 63 Conn. App. 794, 809–10, 778 A.2d 1015 (probation revoked where defendant had criminal history exceeding ten years), cert. denied, 258 Conn. 903, 782 A.2d 140 (2001); State v. Russell, 58 Conn. App. 275, 281, 752 A.2d 59 (2000) (court properly considered defendant's criminal history). The court also had before it the office of adult probation's "risk assessment," which stated that the defendant was a high risk probationer because of his criminal history and because he had been convicted of violating a protective order, which the office of adult probation determined to be a violent offense. The court also heard the testimony of Langrock, who testified that the defendant "made light of probation," that he failed to attend or was late for several scheduled meetings, and that he provided his probation officer with false and misleading information and would not return messages that Langrock left on his pager. Given the defendant's lengthy criminal record, his cavalier attitude about his probation and

his disappearance from the probation authorities from February 7, 2000, until October 21, 2002, we conclude that the court did not abuse its discretion in revoking the defendant's probation and committing him to the custody of the commissioner of correction.

II

The defendant next claims that the court improperly denied his motion to dismiss. It is the defendant's contention that his sixth amendment right to a speedy trial was violated as a result of the delay that existed between the issuance of the warrant for his arrest and his actual arrest. We disagree.

The following facts and procedural history are relevant to our resolution of the defendant's claim. After the defendant failed to report to a scheduled meeting with Langrock on January 18, 2000, Langrock applied for a warrant for the defendant's arrest for violating the terms of the probation. The court, *Resha, J.*, signed the arrest warrant on February 9, 2000. On October 21, 2002, the defendant went to the Danbury police department to turn himself in on the warrant.

On December 10, 2002, the defendant filed a motion to dismiss the violation of probation charge because the proceedings were "not commenced with due diligence in that there was an inordinate delay between the issuance of the warrant for [his] arrest and its execution and delivery." In support of his claim that he was prejudiced by the delay, the defendant relied on *Doggett* v. *United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992), and *State* v. *Cordova*, 38 Conn. Sup. 377, 448 A.2d 848 (1982).

The court, *Fischer, J.*, held a hearing on the defendant's motion to dismiss and the violation of probation on December 19, 2002. Prior to calling its first witness, the state notified the court that the defendant had filed

the motion to dismiss. In response, the court stated: "There's a *Crawford* motion, right?," a reference to our Supreme Court's decision in *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987). The defendant responded that he did not know what the court called the motion, but that it was a "postindictment delay motion." The court again asked whether the motion was based on *Crawford*. The state responded in the affirmative. The defendant responded that he did not know if the court called the motion a *"Crawford* motion," but that he was relying on *Doggett* v. *United States,* supra, 505 U.S. 647, and *State* v. *Cordova,* supra, 38 Conn. Sup. 377. The defendant added that because his motion and the violation of probation hearing required evidence that would overlap, rather than have a separate hearing on the motion and on the violation of probation, the court should proceed with both simultaneously. The state did not object to the defendant's suggested procedure. The court then stated that it would decide the defendant's motion to dismiss after both parties presented their evidence on the violation of probation charge.

Following the presentation of evidence, the court heard argument from the state and the defendant on the motion to dismiss. The defendant argued that as a result of the delay between the time the arrest warrant was obtained and his arrest, a period of two years and eight months, he was prejudiced because "people's memories fade." The state, in response, countered that the defendant was on notice since February 7, 2000, that a warrant was about to be issued for his arrest and that any delay resulted from his failure to keep Langrock informed of his whereabouts.

In denying the defendant's motion to dismiss, the court stated: "From . . . *State* v. *Crawford,* [supra, 202 Conn. 443] . . . this is an affirmative defense to be raised by the defendant. It is raised at the time of trial

or, in this case, at the time of the hearing. Burden is put on the defendant to prove that the elements of the defense by a preponderance of the evidence. And I will quote out of *Crawford* because I think it is exactly relevant here. Since no testimony was taken on the defendant's motion to dismiss concerning the reason for the delay of the warrant in this case, he has failed to meet that burden. We cannot assume, nor could the trial court, [that] the warrant was not executed with due diligence. The warrant directed the officers [to serve it] forthwith and to have him brought before the Superior Court. It is presumed, until the contrary appears, that a public officer is acting officially. A public officer acting officially has done his duty. There is no evidence to the contrary, and there is no evidence to the contrary here. . . . The motion to dismiss is denied."

Although the court's decision denying the defendant's motion to dismiss was based on our Supreme Court's decision in *State* v. *Crawford*, supra, 202 Conn. 443, it is clear from the colloquy that took place between the court and the defendant at the start of the hearing that he was not relying on *Crawford* in support of his motion to dismiss.[4] Because the defendant did not raise *Crawford*, which involved a statute of limitations claim, as a basis for his motion to dismiss, and instead relied on *Doggett* and *Cordova*, which involved speedy trial claims, the court improperly treated the defendant's claim as one based on the statute of limitations. In his brief to this court, the defendant explicitly states that his claim before the trial court, and his appeal before this court, is based on his right to a speedy trial, not that the charges against him should have been dismissed because he was arrested after the statute of limitations had expired. Similarly, the state recognizes in its brief

---

[4] In *Crawford*, our Supreme Court held that the statute of limitations period is tolled when an arrest warrant was issued before the limitation period expires. *State* v. *Crawford*, supra, 202 Conn. 447.

that "it appears that the defendant was raising, at the hearing, a claim of postaccusation delay," thereby implicating his sixth amendment right to a speedy trial. We will therefore address the defendant's claim accordingly.

It is the defendant's claim that he was denied his sixth amendment right to a speedy trial because he was arrested more than two and one-half years after his arrest warrant was issued.[5] Even if we agreed with the defendant's argument that the sixth amendment right to a speedy trial applies to violation of probation hearings, the defendant's claim fails in this case because his sixth amendment rights did not attach on the issuance of the warrant for his arrest. "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States* v. *Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971). "Absent a formal charge, the sixth amendment right to a speedy trial does not extend to the period prior to the arrest." (Internal quotation marks omitted.) *State* v. *Hall*, 17 Conn. App. 502, 507, 554 A.2d 746 (1989), rev'd on other grounds, 213 Conn. 579, 569 A.2d 534 (1990).

In support of his claim, the defendant relies on *Doggett* v. *United States*, supra, 505 U.S. 647, and *State* v. *Cordova*, supra, 38 Conn. Sup. 377. The defendant's reliance, however, is misplaced.

In *Doggett*, the defendant was indicted on February 22, 1980, for conspiring to import and distribute

---

[5] The defendant does not raise any claims under our state constitution. Further, although there are references in his brief to due process, the defendant failed to adequately brief his claim under the due process clause. We therefore limit our review of the defendant's claim to the sixth amendment to the United States constitution.

cocaine. Shortly after being indicted, the defendant left the United States for Colombia. In September, 1982, the defendant returned to the United States and lived openly under his own name. The defendant was arrested on September 5, 1988, eight and one-half years after being indicted, after a marshal's service ran a routine credit check on individuals subject to outstanding arrest warrants. *Doggett* v. *United States*, supra, 505 U.S. 648–50. The defendant sought to dismiss the indictment, arguing that the eight and one-half year delay in prosecuting him violated his sixth amendment right to a speedy trial. The United States Supreme Court reversed the judgment of the District Court denying the defendant's motion. Relying on the four factors that it enunciated in *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972),[6] the court found that the delay between the defendant's indictment and subsequent arrest violated his sixth amendment right to a speedy trial. *Doggett* v. *United States*, supra, 657–59.

*Doggett* is readily distinguishable from the facts before us in several respects. Most notably, the defendant in *Doggett* was formally indicted, thereby implicating his sixth amendment right to a speedy trial. See id., 650. In the case now before us, only a warrant for the defendant's arrest was issued; he was not formally charged until he was arrested in October, 2002. In addition, in *Doggett,* the delay between the defendant's indictment and his arrest was eight and one-half years, and there was no evidence to suggest that the defendant knew of the indictment. Id. In this case, however, the delay between the issuance of the arrest warrant and the defendant's arrest was less than three years, and

[6] The four factors are: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett* v. *United States*, supra, 505 U.S. 651.

there was evidence that the defendant knew that there existed a warrant for his arrest for violating the terms of his probation.

In *Cordova*, the Appellate Session of the Superior Court denied a defendant's claim that his right to a speedy trial was violated when there was an eighteen month delay between the signing of the warrant for the defendant's arrest and when he was arrested. In so doing, the court stated: "The general rule is that when an arrest warrant is used to charge the commission of a criminal offense, the mere issuance of the warrant commences prosecution." *State* v. *Cordova*, supra, 38 Conn. Sup. 380–81. That proposition, however, has been rejected by this court and implicitly rejected by our Supreme Court.[7]

In *State* v. *Hall*, supra, 17 Conn. App. 502, we rejected a defendant's claim that the trial court improperly denied his motion to dismiss a murder charge. The defendant claimed that the three and one-half year delay between when the warrant for his arrest was issued and his subsequent arrest violated his sixth amendment right to a speedy trial, arguing that his right to a speedy trial "arose as of the date the arrest warrant issued . . . ." Id., 505. In rejecting the defendant's sixth amend-

---

[7] We recognize that in our decision in *State* v. *Kruelski*, 41 Conn. App. 476, 677 A.2d 951, cert. denied, 238 Conn. 903, 677 A.2d 1376 (1996), a statute of limitations case, we stated in a footnote: "It is also possible that a defendant's right to a speedy trial might be implicated where there is an inordinate delay between the issuance of a warrant and its execution or delivery." Id., 482 n.3.

Our decision today is not at odds with *Kruelski*. In support of the proposition we stated in *Kruelski*, we relied on the United States Supreme Court's decision in *Doggett* v. *United States*, supra, 505 U.S. 647. For the sixth amendment's right to a speedy trial to be implicated, however, the sixth amendment must first attach. As we have noted, in *Doggett* the defendant had been formally indicted. See id., 650. Thus, his sixth amendment right to a speedy trial had attached. Nothing in *Kruelski* suggests that solely the issuance of an arrest warrant triggers the sixth amendment right to a speedy trial.

ment claim, we stated: "The issuance of an arrest warrant in and of itself does not trigger the sixth amendment right to a speedy trial of a person not yet arrested. . . . Absent a formal charge, the sixth amendment right to a speedy trial does not extend to the period prior to the arrest." (Citation omitted; internal quotation marks omitted.) Id., 507. Because the defendant argued a delay relating to a period before he was arrested or formally charged by information or indictment, we held that the sixth amendment was not implicated. See id.

In *State* v. *Crawford,* supra, 202 Conn. 443, our Supreme Court addressed whether the issuance of an arrest warrant before the statute of limitations expired tolled the running of the statute. In a footnote, the court, noting that it was not an issue before it, addressed the decision of the Appellate Session of the Superior Court in *Cordova.* Id., 452 n.13. Our Supreme Court recognized that the holding in *Cordova* that the issuance of an arrest warrant, in and of itself, triggers a defendant's sixth amendment right to a speedy trial "does not comport with the purpose of the sixth amendment." Id. The court stated: "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nonetheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." Id., 452–53 n.13. The court also stated that the decision in *Cordova* was inconsistent with General Statutes § 54-82m, our speedy trial statute, noting that it does not place any significance on the date the arrest warrant was issued for determining when a defendant's sixth amendment right to a speedy trial attaches. *State* v. *Crawford,* supra, 453 n.13.

In *State* v. *Baker,* 164 Conn. 295, 320 A.2d 801 (1973), our Supreme Court addressed a situation similar to

that which we are presented with today. In *Baker*, the defendant claimed that his constitutional right to a speedy trial was violated when the warrant on which he was arrested was issued six months prior to his arrest. Id., 296. In rejecting the defendant's claim, our Supreme Court relied on the decision of the District of Columbia Court of Appeals in *Henson* v. *United States*, 287 A.2d 106 (D.C. App. 1972). In *Henson*, the court rejected the defendant's claim that his constitutional right to a speedy trial was violated when the warrant for his arrest was issued in January, 1970, but was not executed until thirteen months later. Id., 108. The *Henson* court rejected the defendant's claim that the right to a speedy trial attaches on the date of the offense, holding instead that it attaches on the date of the arrest or the information. Id., 108–109. Relying on the United States Supreme Court's decision in *United States* v. *Marion*, supra, 404 U.S. 307, the court specifically held that the sixth amendment right to a speedy trial does not attach on the issuance of the arrest warrant, but on the actual arrest. *Henson* v. *United States*, supra, 109.

In this case, a warrant was issued for the defendant's arrest on February 9, 2000. The defendant was not formally charged with violating the terms of his probation, however, until he was arrested on October 21, 2002. Because the sixth amendment right to a speedy trial does not attach until a defendant is formally charged, and the defendant in this case was not formally charged until October 21, 2002, the sixth amendment right to a speedy trial was not violated.

The judgment is affirmed.

In this opinion the other judges concurred.