*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0390**

Buckingham Trucking, Inc.,
Respondent,

vs.

Excel Manufacturing, Inc.,
Appellant,

and

Excel Manufacturing, Inc.,
Third Party Plaintiff,

vs.

JWR, Inc.,
Third Party Defendant.

**Filed January 9, 2017
Affirmed
Hooten, Judge**

Ramsey County District Court
File No. 62-CV-13-8333

Michael H. Streater, W. Knapp Fitzsimmons, Briggs and Morgan, P.A., Minneapolis, Minnesota (for respondent Buckingham Trucking)

Patrick W. Michenfelder, Chad A. Throndset, Throndset Michenfelder, LLC, St. Michael, Minnesota (for appellant Excel Manufacturing)

Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Jesson, Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

In this appeal from a judgment entered against appellant following a jury trial, appellant argues that the district court committed multiple reversible evidentiary errors, erred in failing to grant appellant's motion for a judgment as a matter of law (JMOL), and erred in failing to impose sanctions for respondent's alleged evidence spoliation. We affirm.

## FACTS

Appellant Excel Manufacturing, Inc., manufactures industrial recycling equipment. JWR, Inc., is a retailer of industrial recycling equipment, and was Excel's distributor during the relevant time period. Respondent Buckingham Trucking, Inc., is a commercial recycler. This dispute stems from the purchase, installation, and removal of a prototype single-stream recycling sorter (the machine), manufactured by Excel and sold by JWR to Buckingham.

In November 2012, based on a written warranty that the machine would process 10 tons of recycling per hour, Buckingham agreed to purchase the machine from JWR. The machine was to be installed in January 2013, but was delivered late, and was not installed at Buckingham's facility by JWR until mid-April 2013. For a few weeks after installation the machine worked properly, but it soon began to have problems.

From early May 2013 until its ultimate shutdown in late June 2013, the machine underwent several major repairs and did not operate for more than three days consecutively. When the machine was broken down, Buckingham was forced to divert

incoming materials to other facilities. After the machine was permanently shut down, Buckingham manually sorted the incoming recycling using the conveyor belt on the machine.

Once Excel determined that the machine was irreparable, Excel decided that it would either remove the machine to repair it off-site or provide a new machine for Buckingham. Neither of these remedies occurred, and as a result, Buckingham purchased a replacement sorter from a competitor of Excel in the fall of 2013. To make room for the new sorter, Buckingham needed to dissemble and remove the machine. The machine was removed by JWR, and stored outside of Buckingham's facility.

In the fall of 2013, Buckingham reached a settlement with JWR for all claims of damages resulting from the purchase and use of the machine. In December 2013, Buckingham sued Excel for breach of the November 2012 warranty. In its answer, Excel impleaded JWR as a third-party defendant, but all claims between Excel and JWR were settled before trial.

The case went to trial in September 2015, and the jury returned a special verdict, finding that Buckingham suffered $346,400 in damages and that Excel was 100% at fault for those damages. The district court entered judgment in accordance with the jury's verdict. Excel now appeals.

**D E C I S I O N**

**I.**

Before Buckingham's claims were submitted to the jury, Excel moved for JMOL, pursuant to Minn. R. Civ. P. 50.01, arguing that Buckingham's case must fail because it

3

did not produce the original warranty at trial. Excel argues that the district court erred in failing to grant its motion for JMOL because Buckingham's failure to offer the original warranty at trial violated the "best evidence rule." We disagree.

We review the denial of a rule 50 motion for JMOL de novo, applying the same standard as used by the district court. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009). Under rule 50.01, a district court may grant JMOL if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

"The . . . 'best-evidence' rule is merely a name for a rule which requires the contents of a writing to be proved by the writing itself if it is available." *Buffalo Ins. Co. v. United Parking Stations, Inc.*, 277 Minn. 134, 138, 152 N.W.2d 81, 84 (1967). Minnesota has codified the "best evidence rule" in Minn. R. Evid. 1002 & 1003. Rule 1002 states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Legislative Act." Rule 1003 provides, in pertinent part, that "[a] duplicate is admissible to the same extent as an original unless . . . a genuine question is raised as to the authenticity of the original." During trial, Excel objected to the introduction of a photocopy of the warranty, arguing that the best evidence rule requires the true original to be introduced.

We conclude that the best evidence rule does not apply here. During the relevant discovery period, Buckingham did not have custody of the true original. The true original was in the custody of JWR, through its attorney, until it was released to Buckingham days before the trial. The copy entered into evidence was a photocopy of the warranty document

4

that was kept in the regular course of business by Buckingham. Photocopies kept in the regular course of business are considered by statute to be originals for purposes of evidence. Minn. Stat. § 600.135 (2016).

As it provides that a photocopy kept in the regular course of business is "as admissible in evidence as the original itself," section 600.135 clearly fits within the Legislative Act exception in rule 1002. By the plain language of rule 1002 and section 600.135, Buckingham introduced an original, not a duplicate, of the warranty document that was provided and kept during the regular course of business.

Further, while Excel objected to the photocopy being admitted based on a challenge to the authenticity of the *signature* on the warranty, this is not the type of authenticity challenge contemplated by rule 1003. As the committee comment to rule 1003 makes clear, the rule seeks to prohibit introduction of copies that are not exact duplicates of the original. Minn. R. Evid. 1003 cmt. ("With the development of accurate and convenient reproducing systems much of the concern about the admission of duplicates is eliminated. . . . [W]here the accuracy of a duplicate is not contested it makes little sense to prohibit the introduction of a duplicate."). Excel has not made any claim that the signature on the copy produced by Buckingham is not identical to the signature on the true original. Therefore, rule 1003 does not apply here, and the district court properly concluded that Excel was not entitled to JMOL.

**II.**

In a related argument, Excel asserts that the district court erred by not granting Excel a continuance to test the ink on the original warranty. We disagree.

5

Excel made an emergency motion for a continuance on Friday, September 18, 2015 when trial was scheduled to begin on the morning of Monday, September 21, 2015. The district court denied Excel's motion. "The granting of a continuance is a matter within the discretion of the trial court and its ruling will not be reversed absent a showing of clear abuse of discretion." *Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977).

Excel argued to the district court that it was "absolutely blind-sided" by an email from Buckingham's attorney on Wednesday, September 16, 2015, informing Excel that Buckingham was now in possession of the true original warranty.[1] The district court denied Excel's motion based on evidence that Excel had knowledge of the location of the true original warranty 17 months before the date of trial and failed to serve a request under Minn. R. Civ. P. 34 for the true original warranty when Buckingham produced a photocopy.[2]

The record contains evidence that Excel knew of the location of the true original warranty as of February 2014. Excel never specifically requested that Buckingham produce the true original warranty, instead relying on its belief that because of the "best evidence rule," Buckingham had the burden of producing the true original instead of a photocopy kept in the regular course of business. As discussed above, this is an erroneous understanding of the admissibility of photocopies under Minnesota law, because a

---

[1] The true original had been in possession of JWR until that point.

[2] It is also noteworthy that the district court, when considering this motion for a continuance, observed that if Excel's theory of the case was that the warranty was a forgery, that theory could be proved just as effectively with a photocopy of the warranty as with the true original.

photocopy kept in the regular course of business is admissible in evidence as an original. *See* Minn. Stat. § 600.135.

In sum, Excel knew the exact location of the original warranty and had well over a year to request that Buckingham produce it. Even though Excel claims that the true original warranty was the "critical document" to their defense, Excel consciously chose not to specifically request that document, instead relying on a belief that Buckingham had a duty to produce the true original, a belief based on an erroneous understanding of the rules of evidence. Accordingly, we conclude that the district court's denial of Excel's motion for a continuance was not a clear abuse of discretion.

## III.

Excel next challenges two evidentiary rulings. Generally, a district court has "broad discretion over the admission and exclusion of evidence and the [district] court's rulings should not be disturbed by a reviewing court unless the rulings constitute a clear abuse of discretion or are based on an erroneous view of the law." *Bergh & Misson Farms, Inc. v. Great Lakes Transmission Co.*, 565 N.W.2d 23, 26 (Minn. 1997). Further, for a new trial to be granted as a result of erroneous evidentiary rulings, a party must demonstrate that it was prejudiced by that error. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 46 (Minn. 1997).

### a. Evidence of Misuse of the Machine

First, Excel argues that the district court erred by refusing to allow Excel to offer testimony relating to Buckingham's possible misuse of the machine. We disagree.

In July 2015, as a sanction for repeated discovery violations, the district court precluded Excel from offering expert testimony as to the design and manufacture of the machine, pursuant to Minn. R. Civ. P. 37.02(b). Rule 37.02(b) provides, in relevant part:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> . . . .
> (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

We consider five factors in evaluating whether a district court abused its discretion in imposing discovery sanctions: (1) whether the district court set a definitive deadline; (2) whether the district court gave warnings for non-compliance; (3) whether the discovery violation was an isolated event or part of a larger pattern of conduct; (4) whether the violation was willful or without justification; and (5) whether the opposing party has demonstrated prejudice. *Frontier Ins. Co. v. Frontline Processing Corp.*, 788 N.W.2d 917, 923 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010).

These sanctions stem from Excel's repeated failures to meaningfully respond to Buckingham's request for production of the design specifications of the machine. Excel's response to this request was first due in November 2014. In January 2015, Buckingham filed a motion to compel, which was granted, along with sanctions. Given that Excel had already been sanctioned, it cannot argue that it was not on notice that the district court could impose additional sanctions.

Excel was given until seven days after the entry of a protective order that the parties agreed to submit to produce the design specifications of the machine. After Excel's "unreasonable delay" in submitting a protective-order stipulation, the district court issued a second order, ordering Excel to produce the design specifications by February 19, 2015, with or without the protective order. Excel produced some drawings on February 19, 2015, but none of the drawings were of the quality necessary for proper design analysis by potential expert witnesses. Instead, the district court noted that the drawings Excel did produce "have more in common with a middle school geometry problem than with the [computer-aided design] files common in warranty and products cases." Thus, the first two factors, a definitive deadline and warnings for non-compliance, weigh in favor of the appropriateness of a discovery sanction.

The record is replete with evidence that this discovery violation was not an isolated incident. Excel was ordered to pay the costs that Buckingham or JWR incurred in bringing motions to compel discovery no less than three times during the course of this litigation. The district court considered this trend in its decision to authorize sanctions, concluding that "Excel has repeatedly and without justification obstructed discovery in this case. Such obstruction, at this stage, has now surpassed the [c]ourt's ability to remedy with a sanction less severe than that sought by Buckingham." This evidence demonstrates that the third and fourth factors, pattern of conduct and violations that are willful or without justification, weigh in favor of the appropriateness of a discovery sanction.

The final factor, prejudice to Buckingham, was examined at length by the district court. The district court determined that if the designer of the machine were permitted to

9

testify on behalf of Excel without providing Buckingham with proper design specifics, Buckingham could not challenge Excel's claim that the machine was designed and manufactured properly and that any issue with the machine was due to Buckingham's misuse, thus giving Excel "favorable, but unrebuttable, expert opinions." Allowing favorable but unrebuttable expert testimony would clearly prejudice Buckingham and JWR.

We agree with the district court that all five factors weigh in favor of discovery sanctions, and we conclude that the district court did not abuse its discretion in prohibiting Excel from entering evidence on possible misuse of the machine by Buckingham.

### b. Delay Damages

Next, Excel argues that the district court erred by allowing Buckingham to introduce evidence of damages related to delay in delivery when Buckingham only pleaded a breach-of-warranty claim. Excel asserts that a breach-of-warranty claim does not contemplate these damages. Because Excel cannot demonstrate prejudice, we need not address this argument.

Buckingham presented evidence of its calculations of its lost revenues and incremental costs due to the machine failure. This evidence was broken out by month, and included calculations for January to April 2013, the four months between the time Excel allegedly agreed to deliver the machine and the ultimate delivery date. Buckingham sought $9,400 in incidental damages for this four-month period and $96,400 for the remaining relevant period. The jury found Buckingham had sustained $96,400 in incidental damages. Buckingham sought approximately $390,000 in consequential damages for the time period

10

*after* the machine was delivered, and the jury found total consequential damages of $250,000.

By finding that Buckingham had incurred incidental damages in an amount that matched Buckingham's post-delivery claim to the dollar and finding consequential damages in an amount less than Buckingham's post-delivery total, the jury apparently rejected Buckingham's claim that it had suffered delay-related damages. Accordingly, any error in allowing Buckingham to present evidence of delay-related damages was harmless, and Buckingham is not entitled to a new trial. *See* Minn. R. Civ. P. 61 (requiring reviewing court to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

**IV.**

Before trial, Excel moved for sanctions due to Buckingham's and JWR's alleged destruction of the machine. In October 2014, the district court held an evidentiary hearing to determine if sanctions were appropriate for Buckingham's removal and outdoor storage of the machine. The district court determined sanctions were not appropriate because Excel offered insufficient expert testimony to show spoliation of the machine as evidence. Excel argues this denial was reversible error. We disagree.

We review a district court's decision to impose sanctions for an abuse of discretion. *Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn. 1995).

At Buckingham's request, JWR removed the machine by disassembling it in reverse order of the manner in which it was constructed. The owner of JWR testified that JWR used special equipment to remove the machine, and any damage done by its disassembly

11

was superficial. Although the machine was stored outside over a full winter, JWR was able to inspect the machine the next spring, and start each of the motors with an independent generator. Finally, and most importantly, the forensic engineer Excel introduced as an expert witness at the evidentiary hearing had not yet inspected the machine, despite having four months between the time of the district court order giving Excel complete access to the machine and the evidentiary hearing. As a result, Excel could only offer conjecture as to the consequences of the disassembly and storage.

Because the record contains facts indicating that Buckingham did not engage in any spoliation of evidence relating to the machine, we conclude that the district court did not abuse its discretion in declining to impose sanctions against Buckingham.

### V.

Finally, Excel argues the district court erred in denying Excel's motion for a new trial based on the prejudicial effect of cumulative trial errors. "In regards to a motion for a new trial, [appellate courts] will not set aside a jury verdict on an appeal from a district court's denial of a motion for a new trial "unless it is manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict." *Navarre v. S. Washington Cty. Sch.*, 652 N.W.2d 9, 21 (Minn. 2002) (quotations omitted). As we have found no merit in any of Excel's claims of error, we accordingly conclude that the district court did not err in denying Excel's motion for a new trial.

**Affirmed.**